## THE NORTHWESTERN TRAVELING MEN'S ASSOCIATION

### v.

### CATHERINE SCHAUSS.

*Filed at Ottawa November 29, 1893.*

1. BENEFIT SOCIETIES—*burden of proof to show forfeiture of membership.* If a mutual benefit society, when sued by a beneficiary for the sum agreed to be paid, claims that the deceased member has forfeited his membership by a default in the payment of an assessment, the burden of proof to establish such default by competent evidence will lie on the society.

2. SAME—*notice to party insured, of an assessment on him.* In the absence of any stipulation in the contract of insurance of a member of a mutual benefit society as to the mode in which notice of the assessments shall be served, personal notice will be necessary; and before the forfeiture by any member of his membership in the association can be declared, satisfactory proof of such personal service will be required.

3. To show notice to a member of a benefit society of an assessment made on him upon the death of another member, when the constitution provides that "a notice sent to the last address given shall be considered legal notification," it must be made to appear affirmatively that the notice was sent, directed to him at "the last address given." If there is no evidence as to what his last address was, and as to how and to what address the notice claimed to have been sent to him by mail was directed, there will be a substantial defect in the proof, of the service of the notice.

4. SAME—*notice of assessment—from what time it dates.* Where there is no provision in the constitution and laws of such society to the effect that the service of notice shall date from the time of mailing, it can only date from the time of its actual receipt by the member to whom it is addressed, or at least until sufficient time has elapsed to enable it to reach him in due course of mail.

5. SAME—*provision of forfeiture construed.* A provision in the constitution of a benefit society that a member not remitting his assessment within thirty days from the date of notice thereof, shall forfeit his claim to membership, is not self-executing, but requires, in order to terminate the membership, the affirmative action of the association declaring the forfeiture.

6. It is true that provisions in contracts between mutual benefit societies and their members, as well as in other policies of life insur-

ance, which provide, in apt terms, that the non-payment of assessments, dues or premiums shall *ipso facto* work a termination of membership, will be upheld and enforced by the courts. But the decisions generally hold that such provisions will be strictly construed, so as to prevent a forfeiture, if possible.

7. The provision that a member shall forfeit his membership by non-payment of an assessment, will be held to mean that such non-payment is to constitute a cause of forfeiture, and the provision that he shall have his name stricken from the roll of members contemplates future affirmative action of the society.

8. A provision in the constitution of a mutual benefit society, that in case of default in the payment of an assessment a member shall forfeit his claim to membership, requires affirmative action by the proper authorities before the delinquent can be subjected to the forfeiture. The association must, after the delinquency has occurred, ascertain the fact and impose the penalty, and until that is done the membership is not terminated.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. C. R. STARR, Judge, presiding.

Messrs. IRA W. & C. C. BUELL, for the appellant.

Messrs. WEIGLEY, BULKLEY & GRAY, for the appellee.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was a bill in chancery, brought by Catherine Schauss against the North-Western Traveling Men's Association, to compel the collection and payment to her by the association, of the moneys payable upon the membership certificate of John Schauss, a deceased member. The defendant is an association organized July 20, 1876, under the general law of this State relating to corporations not for pecuniary profit, its object being, among other things, that of securing pecuniary aid to the widows, orphans, heirs and devisees of its deceased members.

By the constitution of the association, it was provided, among other things, that upon satisfactory proof of the death

20—148 ILL.

of a member, the board of directors should order an assessment of $2 upon each member, and out of the amount thus collected, to pay to the person or persons entitled thereto, a sum not exceeding $5000, the beneficiary or beneficiaries to whom the money was directed to be paid being, (1) the person or persons, if surviving, to whom the deceased member, in his application for membership, has directed the same to be paid, (2) his devisees, and, (3) those entitled to his estate under the statute of distributions. The constitution also contained the following section:

"Upon receiving notice of an assessment, it is the duty of every member to remit the amount promptly to the treasurer of the association. A notice sent to the last address given shall be considered a legal notification. Any member who does not remit the amount of his assessment within thirty days from the date of notice, shall forfeit his claim to membership and have his name stricken from the roll; but any such person may again become a member upon payment of all dues, subject, however, to the approval of the board of directors."

John Schauss applied for membership in the association soon after its organization, and in his application he directed the moneys payable at his death to be paid to the complainant, who is his mother and only heir at law. His membership certificate was issued to him December 16, 1876, and it is not disputed that he continued to be a member in good standing up to and including August 20, 1887. It is contended, however, that he forfeited his membership and ceased to be a member from and after that day, in consequence of his failure to pay the association the sum of $2 due from him upon an assessment levied July 20, 1887. It appears that the $2 was remitted by Schauss to the association from Milwaukee August 23, 1887, and was received by the association at its office in Chicago the following day, and that it was and still is retained by the association. It is not pretended that notice of

any subsequent assessment was served on Schauss, or that he was guilty of any subsequent default affecting his membership. On April 21, 1888, he died intestate, and the only question in the case is, whether his failure to pay the assessment of July 20, 1887, on or before the 20th day of August following, resulted, *ipso facto,* in a forfeiture and termination of his membership.

The solution of this question must depend, (1) upon whether Schauss is shown to have in fact failed to remit to the association the amount of his assessment within thirty days after the date of notice, within the meaning of the section of the constitution above quoted, and, (2) upon the construction and force to be given to that clause of the section which provides that, upon failure to remit the amount of the assessment within thirty days from the date of notice, a member "shall forfeit his claim to membership and have his name stricken from the roll."

It will hardly be disputed that the burden is upon the association to establish the alleged default by competent proof, before it will be permitted to insist upon a forfeiture. Has it proved that Schauss failed to remit the amount of the assessment within thirty days from the date of notice?

The assessment in question, as the answer alleges and as the evidence shows, was made July 20, 1887. It appears that at that time the association had three death losses unprovided for, and to cover them all, an assessment of $6 was made. Schauss then stood credited with $4 which, as it seems, he had paid in advance to apply on two of these losses, and by the notice sent to him, he was required to pay only the remaining $2. The following is the evidence in relation to the manner in which notice of the assessment was given, as the same appears in the appellant's abstract, and which, at least as against the appellant, we may assume is correct:

Charles H. Hinman, the secretary and treasurer of the association, does not claim to have personally superintended

the preparation and mailing of notices, but on that subject he testifies as follows: "That is the assessment that we notified him on the 20th of July that he owed $2 on, and would expire·on the 20th of August. .We mailed him an assessment notice July 20 to that effect. I do not know and have no means of knowing whether he got that notice. I do not know whether he remitted within thirty days after notice was received by him or not. I know he did not remit until after thirty days after it was issued. Notice was issued on July 20 closing August 20. There has never been any assessment issued out of that office in six years that has not been mailed on the 20th or earlier. The notice bears no date. They are always mailed on the 20th, with perhaps one exception. I have endeavored to mail the assessment notices. They are always issued on the 20th, and, with two exceptions, closing on the 20th of the following month. One is February. We carry it over to the 21st, or 22d, or 23d, as the case may be, in order to give the necessary thirty days; and again when the assessment closes on Sunday, we carry it over to the 21st, so as not to have it close on Sunday."

John Robertson, the cashier of the association, testified as follows: "I see that the assessment notices are gotten ready to mail, and go with the expressman to the post-office with them, and mail them. I do not recollect anything specially in regard to the assessment made of July 20, 1887. I know that the notices were sent either on the 18th or 19th of July, 1887. I know, because we always mailed an assessment notice on the 18th or 19th of the month, and because every month that we have an assessment I personally put them in the post-office. We have never failed to mail assessment notices on or before the 20th of each month, and we take this precaution in sending the notices. The assessment notices and the envelopes are all addressed. Myself with two other clerks in the office enclose the assessment notice in the envelope. The envelopes are taken and checked over by our mail list to see

if the addresses are correct, and that we have one for each member. If any letter in the alphabet contains a certain number of envelopes, that many stamps are counted out and fixed to the envelopes, in order to give us a second count, to know they agree with the number of names we have in the membership list. Then they are put into boxes and taken on the express wagon to the post-office."

It is difficult to derive from this evidence any satisfactory proof of service of notice of the assessment on Schauss more than thirty days prior to the day he remitted the money to the association. There is no pretense of personal service, or of proof that he actually received the notice mailed to him, if one was in fact so mailed. Witness Robertson, who had personal supervision of the preparation and mailing of notices of assessments, seems to have no specific recollection of the fact of mailing the notices of this particular assessment, but feels sure that it was mailed because that was his uniform custom in case of all assessments. But even if this evidence, together with that of Hinman, the secretary and treasurer, be deemed sufficient to prove, *prima facie*, that a notice of the assessment was mailed to Schauss on or before July 20, 1887, there is no evidence as to the place to which the notice was addressed, or whether it was sent "to the last address given."

If there had been no stipulation in the contract as to the mode in which notice of the assessments should be given, personal service would have been necessary, and before the forfeiture by any member of his membership in the association could be declared, satisfactory proof of such personal service would have been required. The only stipulation in the contract as to the mode of giving notice is the one contained in the section of the constitution above quoted, viz.: "A notice sent to the last address given shall be considered legal notification." To dispense with personal service of notice then, it must be made to appear affirmatively that the notice was sent to the member directed to him at "the last address given."

Not only is there no evidence as to what the last address given by Schauss was, but there is no evidence as to how and to what address the notice claimed to have been sent to him by mail was directed.   Here would seem to be a substantial defect in the proof of the substituted service provided for in the contract.

Furthermore, as there is no provision in the constitution to the effect that the service of notice shall date from the time of mailing, it can only date from the time of its actual receipt by the member to whom it is addressed, or, at least, until sufficient time has elapsed to enable it to reach him in due course of mail.   If it be admitted that the notice was mailed to Schauss July 20, there is nothing in the evidence from which it can be determined how long, in due course of mail, it would have taken it to reach him.   It may be that the courts can take notice officially of the usual rapidity with which communications are transmitted and delivered by mail, but they have no official knowledge of the distance between the office in this State where a letter may be mailed and one in another State to which it may be directed.   Either personal service of notice, or the substituted service provided for by the constitution must be shown to have been fully consummated, before the thirty days given for payment of the assessment can have commenced to run, and as there is no evidence from which the date of the consummated service of notice can be ascertained, it is not proved that the remittance of the assessment by Schauss to the association was not made within thirty days after notice.

Upon the other branch of the case, we are of the opinion that the provision of the constitution of the association that a member not remitting his assessment within thirty days from the date of notice "shall forfeit his claim to membership and have his name stricken from the roll," is not self-executing, but requires, in order to a termination of the membership,

the affirmative action of the association, declaring the forfeiture and striking the member's name from the roll.

It is undoubtedly true that provisions in the contracts between mutual benefit societies and their members, as well as in other policies of life insurance, which provide, in apt terms, that the non-payment of assessments, dues or premiums shall, *ipso facto*, work a termination of the membership, will be upheld and enforced by the courts, but the decisions generally hold, that such provisions will be strictly construed, so as to prevent a forfeiture if possible.   Bacon's Ben. Soc. sec. 352. Applying that rule of construction here, the provision that a member shall forfeit his membership by non-payment of an assessment, must be held to mean that such non-payment is to constitute a cause of forfeiture, and the provision that he shall have his name stricken from the roll very clearly contemplates future affirmative action by the association by way of striking his name from the roll.

Statutes declaring and imposing forfeitures in terms substantially identical with those here employed are very frequent, but it has never been held that such statutes are self-executing.   The forfeiture must always be ascertained and declared by some competent tribunal before it becomes operative.  The constitution of the association in this case is its private statute, governing, among other things, the relations, rights, duties and obligations of its members, and there is no reason why the same rules of construction should not be applied to it as should obtain in case of acts of the State Legislature.   Its provision that, in case of default in the payment of an assessment, a member shall forfeit his claim to membership, requires affirmative action by the proper authorities, before the delinquent can be subjected to the forfeiture.   The association must, after the delinquency has occurred, ascertain the fact and impose the penalty, and until that is done, the membership is not terminated.

We are aware that there is some apparent conflict in the decisions in which provisions of the constitutions and by-laws of mutual benefit societies of this and similar nature have been construed, but we think that on examination it will be found, that the apparent conflict is due mainly if not wholly to essential differences in the phraseology of the provisions under consideration in the various cases. Thus, in *Illinois Order Mutual Aid* v. *Besterfield*, 37 Ill. App. 522, and *Hansen* v. *Supreme Lodge, etc.* 40 id. 216, the provision was that in case of delinquency of the member in the payment of an assessment within thirty days after notice, "he shall stand suspended," thus clearly indicating an intention that the delinquency should *ipso facto* work a suspension. In *Rood* v. *Railway, etc. Mut. Ben. Ass'n*, 31 Fed. Rep. 62, the by-laws provided that in case of the delinquency of a member, "he shall cease to be a member," and it was held that the provision was self-executing. But we are referred to no case where that force has been given to a provision that in case of delinquency, the delinquent "shall forfeit his claim to membership."

There is no evidence in the case of any affirmative action by the association by which it attempted to declare the forfeiture and terminate Schauss' membership. No action by the board of directors having that end in view is shown. It is true the secretary and treasurer, after the money remitted by Schauss had been received by him, wrote to Schauss acknowledging the receipt of the money, but informing him that the payment had been made too late. It would seem, however, that declaring a forfeiture for non-payment of the assessment was not a part of the duties of the secretary and treasurer, as the constitution, in prescribing his powers and duties, gives him no power to act in a matter of that character, but provides that, "He shall keep an account with the members, and report all delinquencies in payment to the board of directors." The directors alone seem to have had authority to declare the forfeiture, and that they are not shown to have done.

At the hearing, the Circuit Court found and decreed that Schauss was a member of the association in good standing at the time of his death; that the association had more than 2500 members liable to an assessment of $2 each; that the complainant is entitled to have an assessment levied and collected, and to be paid out of the proceeds thereof the sum of $5000, with interest. The association was thereupon ordered to proceed at once to levy and collect such assessment, and out of the proceeds, to pay the complainant the above mentioned sum and interest, together with her costs.

That decree, on appeal to the Appellate Court, was affirmed, and this appeal is from the judgment of affirmance. After carefully considering the case, we are of the opinion that the judgment of the Appellate Court affirming the decree is correct, and its judgment will accordingly be affirmed.

*Judgment affirmed.*