Parker v. Bankers Life Ass'n.

Hale G. Parker et al. v. Bankers Life Association.

1. Mutual Benefit Associations—*Delinquent Members—Cancellation of Certificates.*—Under a by-law of a mutual benefit association, providing that default in payment of an assessment at maturity shall operate to terminate the delinquent membership and to cancel his certificate, without any further act or ceremony, etc., a default in such payment *ipso facto* terminates the membership of the delinquent member and cancels his certificate without any further act or ceremony.

2. Same—*When a Formal Declaration of Forfeiture is Not Necessary.*—In a case where the policy is not forfeited by non-payment of premium *ipso facto*, but only so at the election of the insurer, a formal declaration of forfeiture is not necessary, but the forfeiture may be relied on as a defense to an action for the sum insured.

3. Same—*Forfeiture Not Waived by Mailing Notice of Assessment After Death.*—There is no element of estoppel in the mere fact that a benefit association mailed a notice of assignment to a delinquent member's former address after he was dead, because in such case no act of his could be induced by the notice, neither can it be claimed that there was any element of contract in the mailing of such notice.

4. Same—*Effect of Mailing Notice to Delinquent Member After His Death.*—When a benefit association has no knowledge or notice that a delinquent member is dead, the mailing of an assessment notice to him at his former place of residence is a mere nullity, and gives his representatives no right of action which before they had not.

5. Forfeiture—*When a Perfect Defense.*—An adjudication of forfeiture is a perfect defense to notes given to a benefit association for an extension of time to pay his contribution to the guarantee trust fund of such association, whether in the hands of the association or of an assignee after maturity.

Assumpsit, upon a life insurance policy. Appeal from the Circuit Court of Cook County; the Hon. Abner Smith, Judge, presiding. Heard in this court at the March term, 1899. Affirmed. Opinion filed January 4, 1900.

Statement.—This was an action by appellants against appellee on the following certificate of membership :

" The Bankers Life Association of St. Paul, Minnesota, No. 22,303. Age, 43. Annual dues, $6.45. Single mortuary assessment 861. This certifies that The Bankers Life Association of Minnesota, upon the written application of Edward C. Lynch, of Chicago, in the State of Illinois, and

upon the statements and warranties therein contained, which application and the answers therein made are hereby made warranties and a part of this contract, has on the 24th day of July, A. D. 1895, admitted him to one full membership in said association, and in virtue thereof he shall participate in and enjoy all the benefits conferred by said association so long as he shall perform the duties and obligations incident to such membership according to the Articles of Incorporation of said association. The said association, in consideration of said application and the answers therein contained, and that said member has made the guaranty deposit and payments called for by said articles, hereby covenants and agrees that said association, after the death of said member and within sixty days after due and satisfactory proof thereof shall have been furnished thereto, will pay at the office thereof in St. Paul, in the State of Minnesota, unto his daughters, Mary F., Drusilla and Annie Lynch, share and share alike if all living, otherwise, this certificate shall become payable and be paid unto the executors or administrators of the estate of said deceased member, in trust, however, for and forthwith to be paid over by said executors or administrators to the heirs at law of said deceased member, the sum of two thousand dollars ($2,000.00), on the express condition, however, and provided that the statements, matters and answers made, stated and set forth in said application are all true in fact, and upon the express conditions provided that said member shall have paid all the annual dues and mortuary assessments imposed upon him during his life, pursuant to said articles, and said sum to be paid from the mortuary funds of said association, and the deficiency, if any, from the guaranty trust fund thereof, and provided that this certificate shall become null and void if death occurs from self-destruction within two years from this date, said member being sane or insane, or if death shall have been caused by the hand of justice in consequence of the violation of any law; and provided, further, that no action shall be brought or sustained upon or under this certificate unless commenced within one year after the date of the death of said member.

"In testimony whereof, the said corporation has caused the name of its president and secretary to be signed and its corporate seal to be affixed.

{ CORPORATE SEAL
  Bankers Life Association
  of Minnesota. }     "CORTLAND H. TAYLOR, President.
                      "DOUGLAS PUTNAM, Secretary."

The foregoing certificate was issued July 24, 1895.

The cause was submitted to the court without pleadings, a jury being waived, upon a stipulation as to the facts, and the court found for appellee and rendered judgment accordingly, from which judgment this appeal is taken.

The articles of incorporation of appellee are included in the stipulation of facts, and among such articles are the following:

"IV.  Requirements for Admission.

"Any person not less than eighteen nor over fifty-five years of age (counting to his nearest birthday), approved by the medical director of this company, may be admitted to one membership therein upon his application therefor, and upon his depositing with or to the credit of this company the following sums of money: First, as many dollars as he is years of age (counting to his nearest birthday), based upon a membership of $2,000, or a like proportion upon other amounts, as his deposit in the guarantee trust fund of the association, which fund shall be a pledge to secure payments to be made by this association for death of members, and shall belong to this association. Second, a membership fee equal to half his guaranty deposit. Third, his proportion of the annual expense assessment for the company's current fiscal year.

"Provided, however, that time for the making of said payments, or any of them, may be granted to any applicant, subject to the approval thereof by the board of trustees, but when granted, default made in the punctual payment of such deferred payments, or any of them, at maturity, shall operate to terminate the applicant's membership and to cancel his certificate thereof without any further act or ceremony," etc.

It was stipulated as follows:

"That on the 24th day of July, 1895, said Edward C. Lynch was forty-three years of age; that under Article 4 of said Charter he should, in order to become a member of said association and entitled to any of the benefits of membership therein, have paid to the association the sum of $43.00 as his contribution to the guarantee trust fund of said association, the sum of $21.50 as a membership fee in said association, and the sum of $6.45 as his proportion of the annual expense assessment of said defendant for said defendant's then current fiscal year; that Edward C. Lynch did not, in fact, make said payments or any of them in cash

on said 24th day of July, 1895, or ever or at all, but applied to said defendant for time within which to make said payments; that said defendant did thereupon, with the approval of its board of trustees, grant said Edward C. Lynch further time in which to make said payments; that is to say, said defendant granted to said Edward C. Lynch thirty days from the 20th day of July, 1895, within which to make the payment of $27.95, on account of said membership fee and the proportion of the annual expense assessment for the company's then fiscal year; and one year from July 24, 1895, within which to make payment of the sum of $21.50, one-half of the deposit of said Edward C. Lynch in the said guaranty trust fund of said association; and two years from July 24, 1895, within which to make payment of the further sum of $21.50, the remainder of said Edward C. Lynch's deposit in the guaranty trust fund of said association, subject to and in accordance with the provisions of Article 4 of said Charter and Articles of Incorporation; that said Edward C. Lynch accepted said extensions and agreed to make said payments; that is to say, $27.95 thirty days from July 20, 1895; $21.50 one year from July 24, 1895; and $21.50 two years from July 24, 1895, and thereupon executed and delivered to said Bankers Life Association his promissory notes in writing, signed by him, for said several sums of money, payable as aforesaid, which said notes, and each of them, contained the following provisions: 'This note is given upon condition that if I fail to pay said note at maturity then my certificate of membership, 22,303, shall become null and void.' No demand was ever made of said Edward C. Lynch for the payment of said note of $27.95, nor was the same presented for payment to said Edward C. Lynch, nor has the same, or any part thereof, been paid."

That October 31, 1895, Edward C. Lynch died a natural death; that prior to December 26, 1895, appellee had no positive knowledge of his death, but that January 2, 1896, appellee's local agent, at Chicago, was notified that he was dead, and demand was made on said local agent for payment of the amount named in the certificate, but appellee denied all liability on account of the certificate, and refused to pay the same; that neither Edward C. Lynch, nor any one for him, ever paid anything as a consideration for said certificate, or on account of contribution to the guaranty trust fund of appellee, or on account of dues or expenses or

assessments, nor on any account whatever; but only gave said notes, which notes have been, since their date, and now are, in appellee's possession; that prior to January 5, 1896, appellee had neither knowledge nor notice of the death of Edward C. Lynch; that certain members who were entitled to death benefits having died, appellee, December 1, 1895, passed the resolution for an assessment on account of said benefits hereinafter mentioned, and that December 3, 1895, appellee's secretary mailed to all members of the association a certain notice, a copy of which was addressed to Edward C. Lynch at said date, at his postoffice address, 380 Belmont avenue, Chicago, Illinois. The notice so mailed is as follows:

" Office of the Bankers Life Association of Minnesota,
" St. Paul, Minn., Dec. 3, 1895.
"E. C. Lynch:

" Dear Sir:—At a meeting of the Board of Trustees of the Bankers Life Association, duly called and held at its office in St. Paul, Minnesota, the following resolution was adopted: ' Whereas, among the death claims established and proved are the following: (Here follows a list of deceased members, showing their former residence, the dates of their deaths, the numbers of certificates held by them and the amounts to be paid to them, respectively.)

"You are assessed only for the deaths which occurred after your certificate was issued." 'Therefore, be it Resolved, that on the first day of December, 1895, the members of the Bankers Life Association of Minnesota be and they are hereby severally and respectively assessed two per cent of their respective guaranty deposits on account of each of said claims, to be collected and applied according to the Articles of Association.'

" In accordance with the above resolution you are hereby assessed the following amount hereinafter named and specified, in consequence of such of said death claims as have occurred since your certificate was issued, and you are hereby requested and notified to pay the following sum for the purpose of paying the losses of said association occasioned by the death of its members:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| On your policy No. 22,303 | | 4 assessments | 86 | $ 3.44 |
| " " " " | ____ __ | " | — | $—— |
| " " " " | ____ __ | " | — | $—— |
| " " " " | ____ __ | " | — | $—— |
| Total .............................. | | | | $—— |

"Pay at the Merchants Loan & Trust Co. Bank of your city.

"BANKERS LIFE ASSOCIATION OF MINNESOTA.

"By Douglas Putnam, Secretary.

"The sending of this notice, or payment of the above amount shall not be held to waive any forfeiture or lapse of membership if previous assessments or dues remain unpaid; nor will payment of the above amount re-admit any member in default in consequence of any Guaranty Trust Fund note unpaid at maturity.

"TIME EXPIRES Thursday, January 2, 1896, after which date right to benefits is terminated on all memberships in arrears. To avoid possibility of terminating your membership you are urgently requested to give above notice your immediate attention."

Lynch, as before stated, died October 31, 1895, prior to the time the assessment mentioned in the notice was made, and no part of the assessment was paid on his account. January 2, 1896, appellee's secretary mailed to Edward C. Lynch another notice, addressed as was the former one, which notice is as follows :

"TIME EXPIRES January 2, 1896, on which date right to benefits is terminated on all memberships in arrears.

"FINAL NOTICE.

"The BANKERS LIFE ASSOCIATION.

"Fire and Marine Building, St. Paul, Minn.

"E. C. LYNCH:

"DEAR SIR—Your December Mortuary Assessment, amounting to $3.44, (as per notice previously sent you), is payable at

"THIS OFFICE

"On or before Thursday, January 2, 1896.

"Please protect your membership by payment of the same on or before the date named.

"Respectfully yours,

"DOUGLAS PUTNAM, Secretary."

Attached to this last notice was a blank form of application for re-admission as a member of the association, and for a declaration that the applicant is in good health, free from disease and of temperate habits.

Article 11 of the Articles of Incorporation provides, in

substance, that the mailing of such a notice as the first above mentioned, shall be sufficient service of the notice, and shall constitute a sufficient demand for the payment of the assessment.

MILLER & BLAYNEY and M. P. HATHAWAY, attorneys for appellants.

In order that the forfeiture may be effectual the insurer must, after the alleged non-payment, by some overt act, show that he considers the policy forfeited; and if, with knowledge of the act upon which the forfeiture is predicated, by some such act he shows that he considers the policy to be in force, he will be deemed to have waived the right of forfeiture. Am. & Eng. Ency. of Law, Vol. 28, p. 526; Bishop on Contracts, Sec. 792; May on Insurance, Vol. 20, Sec. 502a; Niblack on Benefit Societies, 246, 305 and 307; Teutonic L. I. Co. v. Anderson, 77 Ill. 384; Olmstead v. F. M. & I. Co., 15 N. W. (Mich.) 82; 50 Mich. 200; Farmers' U. I. C. v. Wilder, 35 Neb. 572; S. C., 53 N. W. 587; People v. Manhattan I. Co., 9 Wend. 381.

SAMUEL E. HALL, attorney for appellee; HOWARD LESLIE SMITH, of counsel.

The insurance in this case terminated upon failure to pay the Guaranty Trust Fund note without any further act or proceeding. Thompson v. Insurance Co., 104 U. S. 252; Sullivan et al. v. Connecticut Ind. Assn. (Ga.), 29 S. E. Rep. 41; Laughlin v. Fidelity Mutual Life Assn. (Tex.), 28 S. W. Rep. 411; Union Central Life Ins. Co. v. Chowning (Tex.), 28; S. W. Rep. 117; Garlick v. Ins. Co., 44 Iowa, 553.

The company was not required to make a demand for the payment of the note, and on refusal to pay, to declare the policy void or to take any other action whatever. U. S. Life Ins. Co. v. Ross, 159 Ill. 476; Dale v. Continental Ins. Co.; 31 S. W. Rep. 267; Schimp v. Cedar Rapids Ins. Co., 124 Ill. 354; Supreme Lodge v. Keener, 25 S. W. Rep. 1084; Ins. Co. v. McMillen, 24 Ohio St. 67.

Unless a waiver contains elements of estoppel, it must

amount to a contract and have a consideration to support it. Ill. Masons' Benevolent Society. v. Baldwin, 86 Ill. 479; Garlick v. Ins. Co., 44 Iowa, 553.

MR. JUSTICE ADAMS delivered the opinion of the court.

The defense relied on by appellee in the trial court is, that appellants' membership in the association became absolutely forfeited by the non-payment of the first note mentioned in the foregoing statement. Appellants' counsel contend, on the contrary, that there was no forfeiture, for support of which position they urge the following reasons : First, that no power to declare a forfeiture is reserved in the certificate of membership; second, that it does not appear from the stipulation of facts, or otherwise, that the articles of association of appellee included in the stipulation of facts were its articles of association July 24, 1895, when the certificate of membership was issued; third, that no demand was made for payment of the notes. Appellants' counsel say that the power to declare a forfeiture is not reserved in the policy itself, meaning the certificate of membership, citing Insurance Co. v. Welsh, 30 Ohio St. 240, in which case the policy contained only the usual forfeiture clause. In this case the certificate or policy expressly refers to the articles of incorporation. After reciting the admission of the deceased to membership, it proceeds thus : " He shall participate in and enjoy all the benefits conferred by said association so long as he shall perform the duties and obligations incident to such membership, according' to the articles of incorporation of said association." Also, payment of the death benefit, $2,000, is stated in the certificate to be " upon the express conditions provided, that said member shall have paid all the annual dues and mortuary assessments imposed upon him during his life, pursuant to said articles." The articles of incorporation are a part of the contract. Palmer v. Welch, 132 Ill. 141; Ry. Conductors' Assn. v. Robinson, 147 Ib. 138; Lehman v. Clark, 174 Ib. 279.

By Article 4 of the Articles of Incorporation, he was re-

quired to pay before or at the time of his admission, a membership fee, a deposit on account of the guaranty fund, and his proportion of the annual expense assessment for the then current fiscal year.

It is stipulated that under article 4, the deceased, in order to become a member of the association and entitled to any of the benefits of membership therein, should have paid to the association $43 as his contribution to the guaranty trust fund, $21.50 as a membership fee, and $6.45 as his proportion of the annual expense assessment.

By Article 4 of the Articles of Incorporation it is provided that time may be granted for the making of such payments, " but when granted, default made in the punctual payment of such deferred payments, or any of them, at maturity, shall operate to terminate the applicant's membership, and to cancel his certificate thereof, without any further act or ceremony." Time was granted to the deceased to make said payments, which he accepted and executed notes for the deferred payments for the following sums due at the following dates : $29.96 due August 30, 1895; $21.50 due July 24, 1896; $21.50 due July 24, 1897. Each of the notes contained these words : " This note is given upon condition that if I fail to pay said note at maturity, then my certificate of membership 22,303 shall become null and void." Edward C. Lynch died October 31, 1895, two months after the maturity of the note for $29.95, not having paid that note, or anything whatever, to appellee.

Article 4 being a part of the contract of the assured, it can not be said that the contract does not provide for a forfeiture for non-payment of the deferred payments represented by the notes.

The contention of appellants' counsel that it does not appear that the articles of incorporation included in the stipulation of facts were the articles at the date of the issuance of the certificate is, we think, untenable. It is provided by article 10, in respect to the guaranty fund, that that article shall not be amended or changed, without the consent of every member, to be given in writing, signed by him, etc.

This is the only limitation of the power of amendment, and counsel contend that the article may have been amended since the certificate was issued.

Article 12 is in part as follows:

### " TRUSTEES—OFFICERS.

" The officers of this company shall be a president, vice-president, secretary, treasurer, medical director, attorney, and five trustees. The first board of trustees are by the incorporators of this company hereby chosen, and shall be Bruno Beaupre, whose term of office shall be two years; William H. Merriam, whose term of office shall be four years; John B. Sanborn, whose term of office shall be six years; Maurice Auerbach, whose term of office shall be eight years; and Charles H. Bigelow, whose term of office shall be ten years; and each of whom shall continue in office from the first Monday of August, A. D. 1880, until his successor is duly elected or appointed and qualified, and shall reside at Saint Paul, in said State, meanwhile; and permanent removal from said Saint Paul by any trustee hereby appointed or hereafter appointed or elected, shall operate as a formal resignation by him of such offices. All vacancies in said board, whether occasioned by death or resignation, shall be filled by the remaining members of said board; but the trustee so appointed shall continue in office for the unexpired term of predecessor.

" There shall be elected by the members of this company, at the office thereof in Saint Paul, on the first Monday of August, A. D. 1882, and biennially thereafter, one trustee, which election shall be conducted and canvassed according to the by-laws of this company. At any election of trustees hereunder, each member shall be entitled to cast one vote for each full membership, and half a vote for each half membership then held by him."

The 12th is the last of the articles, and is signed by Charles H. Bigelow, William R. Merriam, John B. Sanborn and Maurice Auerbach, four of the trustees named in the articles. It is stipulated that appellee was organized as a corporation March 9, 1895, and the certificate of membership in question was issued July 24, 1895, four months and fifteen days after appellee became a corporation. The fact that four of the first board of trustees chosen by the incorporators signed the articles of incorporation, is evi-

dence from which it may be legitimately inferred that the articles in question are the original articles of incorporation. The conclusion of article 12 provides that the board of trustees shall have power to amend the articles, except as therein otherwise provided, but it is not probable, but is contrary to experience and usage, to suppose that the board of trustees signed their names to an amendment of the articles, or any of them. The usual way of making and authenticating such an amendment is to pass it at a regular meeting of the board, and have it entered in the records of the board meeting by the secretary of the corporation. The provision in each of the notes, that if the deceased should fail to pay the note at maturity, his certificate of membership should become null and void, is substantially the same as that contained in article 4, and is evidence from which it may be inferred that article 4 was in force when the notes were given. It is hardly to be presumed that the assured would have signed notes containing such provision, unless in accordance with his contract. The court, in a proposition presented by appellants' counsel, held that the burden was on appellee to prove that the articles in question were those in force when the certificate issued; therefore the court must have held, and we think was warranted in holding, that such proof was made. Lastly, it must have been understood by the parties to the stipulation of facts that the articles of incorporation included in it were the articles in force when the certificate of membership was issued, because otherwise their insertion in the stipulation was meaningless and of no effect. Appellants, by their attorneys, knowing that such was the understanding of appellee, we are inclined to the opinion that they should not now be heard to contend otherwise.

The non-payment of the first note at maturity, *ipso facto*, terminated the membership of Edward C. Lynch, and canceled his certificate, " without any further act or ceremony." Order Mut. Aid v. Besterfield, 37 Ill. App. 522; Hansen v. Sup. Lodge K. of H., 40 Ib. 216; N. W. Traveling Men's Ass'n v. Schauss, 148 Ill. 304, 312; Rood v. Railway, etc.,

Benefit Ass'n, 31 Fed. Rep. 62; Thompson v. Insurance Co., 104 U. S. 252; Niblack on Ben. Societies, 536, Sec. 289.

In N. W. Traveling Men's Ass'n v. Schauss, *supra*, the court say (p. 312):

"Thus in Ill. Order Mutual Aid v. Besterfield, 37 Ill. App. 522, and in Hansen v. Supreme Lodge, etc., 40 Id. 216, the provision was that in case of delinquency of the member in the payment of an assessment within thirty days after notice, 'he shall stand suspended,' thus clearly indicating an intention that the delinquency should *ipso facto* work a suspension."

In the present case the articles of association, which are a part of the contract, provide that time may be granted in which to make the payments, "but when granted, default made in the punctual payment of such deferred payments or *any* of them, at maturity, shall operate to terminate the applicant's membership, *without* any further act or ceremony." This language is too plain for construction, even in a policy of insurance.

Even in a case in which the policy is not forfeited by nonpayment of premium *ipso facto*, but only so at the election of the insurer a formal declaration of forfeiture is not necessary, but the forfeiture may be relied on as a defense to an action for the sum insured. Schimp v. Cedar Rapids Ins. Co., 124 Ill. 354.

Appellants' counsel contend that the recital in the certificate, "that said member has made the guaranty deposits and payments called for by said articles," estops appellee to deny such payments, citing Ill. Cent. Ins. Co. v. Wolf, 37 Ill. 354, and Prov. L. Ins. Co. v. Fennell, 49 Ill. 180.

In the former case the court held that the policy having admitted the receipt by the company of the premium it was not competent for the company to prove that it was not paid, but that a note was taken for it. The latter case is to the same effect. We think the present case clearly distinguishable from the case cited. The present case was submitted to the court on a stipulation that none of the notes were paid; that the assured had not paid anything whatever to appellee. The last clause of the stipulation is as

follows: "All right of objection to any matters herein contained for relevancy, competency or otherwise, is hereby reserved to each party hereto." Appellants' counsel made no objection in the trial court to the statement in the stipulation that the assured did not make the payments in question, or any of them, and such objection can not successfully be first made in this court. The only motion of appellants to strike out evidence was a motion to strike out of the stipulation of facts the articles of incorporation, which motion was properly overruled.

It is urged by appellants' counsel that the forfeiture was waived by mailing to the former address of the deceased, after his death, notice of an assessment which was made after his death. There can be no pretense that there is any element of estoppel in the mere fact that appellee mailed the notice to Lynch's former address after he was dead, because in such case no act of his could be induced by the notice; neither can it be claimed that there was any element of contract in the mailing of the notice. Benevolent Society v. Baldwin, 86 Ill. 479.

Prior to January 5, 1896, appellee had neither knowledge nor notice that the assured was dead, and the notice mailed December 3, 1895, was, in our opinion, a mere nullity. Appellants, prior to the mailing of the notice on December 3, 1895, had no right of action, because the assured, by his default, ceased to be a member of the association or entitled to any benefit from it prior to his death, so that the contention of appellants' counsel, in the final analysis, is that the act of appellee in mailing the notice to the former address of the assured, he being dead and presumably buried, gave appellants a right of action which before they had not.

Schimp v. Cedar Rapids Co., 124 Ill. 354, was a suit to recover for a loss by fire under a policy issued June 16, 1882. The premium was $21.50, $10 of which was paid in cash and a note was given for $11.50, payable June 1, 1883, which note contained this provision: "This note is given for insurance, and in case of loss under the policy for which

it is given, becomes due and payable on the date of such loss." The loss occurred February 18, 1883 ; suit was commenced April 12th next after that date, and May 28, 1883, the premium note was paid by the assured through a bank. It was conceded by the assured that the insurance company had a good defense to the action if it had not waived it, but he contended that the company had waived its defense by accepting payment of the premium note. The court, after commenting on the doctrine of waiver, say :

"The doctrine of waiver, however, in our opinion, has no application to the facts of this case. The act of the company relied on as a waiver of its right of defense accrued long after the risk under the policy had terminated by the happening of the contingency insured against."

That there was no intention on the part of appellee to waive anything is evidenced by the statement annexed to and mailed with the notice that the notice " shall not be held to waive any forfeiture or lapse of membership," etc.

Appellants' counsel, in their brief of points, make the objection, but do not seem to rely on it in argument, that " the company should not be allowed to retain the note given in payment of the premium and assess the policy while claiming it to be void." The notes were not received in payment, but merely as evidence of deferred payments, and there was no assessment during the lifetime of the assured, and subsequent to the forfeiture by his default. The return of the notes to the assured was not necessary to enable appellee to insist on the forfeiture by way of defense. The forfeiture occurred solely by reason of the default of the assured, and the contract expressly provides that no act of the appellee subsequent to the default of the assured shall be necessary to effect a forfeiture. The forfeiture having occurred *eo instanti* on the default of the assured, and no subsequent act of appellee being necessary to effect that result, appellee's defense was then perfect, and the retention by it of the notes could not relieve the forfeiture or weaken the defense.

Bane v. Traveler's Ins. Co., 85 Ky. 677, cited in support of appellee's position, is against it. In that case an order

on a railway company, payable by installments, was given by the assured for the premiums, which order was not paid and which was not returned by the insurance company. The company when sued relied on forfeiture as a defense, and it was objected that the order had not been returned. The court say:

"The only real question, it seems to us, is whether the insurance company was required to return to the insured the order, and notify him that the contract of insurance was at an end, upon peril, if it did not do so, that it should operate as a continuance of the contract."

The court held that the insurance company was not precluded from claiming a forfeiture, saying:

"It was his duty, if he desired to continue the policy, to have paid the installments, and his failure to do so terminated the policy. It is really a misnomer to say that the policy in this instance was forfeited by the non-payment of the premium. The insurance, by the express terms of the policy, ceased because of such non-payment."

Other cases cited by appellants' counsel are not the least in point.

The trial of this case occurred in January, 1899; all the notes were then long past due and were then in appellee's possession, as they had been from the time of their execution. Appellee can not claim a forfeiture and at the same time recover on the notes; *ex. gr.*, a landlord can not insist on a forfeiture for non-payment of rent and still claim the rent for non-payment of which he insists on a forfeiture. Stuyvesant v. Davis, 9 Paige, 427.

If one, after a forfeiture or declaration of forfeiture, for non-payment of money, accepts the money, the forfeiture is at an end. It follows that an adjudication of forfeiture is a perfect defense to the notes, whether in the hands of appellee, or of an assignee after maturity. The stipulation is expressed to be of all the facts, and it does not appear that the assured, while living, ever requested a return of the notes, or that since his death there has been any personal representative of his estate to whom they might safely have been tendered or returned.

The judgment will be affirmed.