## The Farmers' Federation v. Barbara Croney et al.

1.  FORFEITURES—*What an Insurance Company Must Show Before Defense of Forfeiture Can Prevail.*—As a general rule forfeitures are not favored by courts, especially a forfeiture of a member's rights under a contract of insurance in a fraternal association. Before the defense of a forfeiture, because of non-payment of an assessment, can prevail, it must not only appear that every step necessary to constitute a legal assessment has been taken, but also that the member alleged to be in default has been notified in the precise manner specified by the rules and regulations of the order.

2.  FRATERNAL INSURANCE—*Company Must Show that it Has Given Notice of Assessment Which Contract Requires.*—When the contract between a benefit insurance society and its members provides that assessments shall be due a certain time after a particular notice has been given, the society, before it can claim that a member has been suspended for failure to pay such an assessment, must show affirmatively that it has given the notice of that assessment which the contract requires.

Assumpsit, on a benefit certificate. Appeal from the Circuit Court of Sangamon County; the Hon. JAMES A. CREIGHTON, Judge presiding. Heard in this court at the May term, 1902. Affirmed. Opinion filed November 1, 1902.

GEORGE W. KENNEY, attorney for appellant.

SHUTT & GRAHAM and HUGH J. GRAHAM, attorneys for appellees.

MR. JUSTICE HARKER delivered the opinion of the court.

This is an appeal from a judgment of $709.17, rendered against appellant, a fraternal insurance company, in favor of appellees, the beneficiaries in a life policy issued to William F. Croney, deceased.

Appellant issued its policy of insurance, or benefit cer-

tificate, as it is called, on the 15th of April, 1899, to William F. Croney, as a member of Sherman Union No. 8, located at Sherman, Illinois. The certificate named his wife, Barbara Croney, and two minor children beneficiaries. He paid all assessments levied upon him in accordance with the constitution, by-laws and rules of appellant, except the one levied November 1, 1899, due on or before December 1, 1899. On the 17th of December, 1899, he was accidentally shot, and three days later died. After he was shot, he, through his brother-in-law, paid to the secretary of his local union (the person entitled to receive assessments from members) his November assessment and received a receipt therefor.

The certificate of insurance recited that a failure to pay any assessment within the time specified by the constitution, by-laws or rules of the order would render the certificate null and void. It is provided in the by-laws that assessments shall be paid by members to their respective local secretaries on or before the first day of the month following the date of the call made and published for such assessments, and that a member failing to so pay shall be suspended and regarded as electing to terminate his membership. It is also provided that a member suspended for non-payment of assessments may be reinstated within sixty days by paying up all arrearages, if in good health. Wherefore, it is contended by appellant that, as the November assessment was required to be paid on or before the first of December, the failure of Croney to pay within that time, *ipso facto* terminated his membership and rendered the certificate of insurance void. It further contends that payment of the assessment after he was shot could not have the effect to reinstate him, because he was not at the time in good health, good health being one of the required conditions for reinstatement.

Appellees introduced in evidence the certificate of insurance, certain sections of appellant's constitution and by-laws, proof of Croney's injury and death, and proofs of the payment of the November assessment to the secretary of the local union. Appellant introduced no evidence.

Much of appellant's printed brief is devoted to a discussion of the proposition that the suspension clause for non-payment of assessments, contained in the by-laws, is self-executing, and the proposition that the secretary of the local union had no power to waive the "good health" condition when an attempt was made to reinstate Croney. In the view taken by us of the record, a discussion of those propositions is hardly necessary.

Appellant contends for a forfeiture. As a general rule, forfeitures are not favored by courts, especially a forfeiture of a member's rights under a contract of insurance in a fraternal association. Coverdale et al. v. Royal Arcanum, 193 Ill. 91; Union Mutual Accident Association v. Frohard, 134 Ill. 228. Before the defense of a forfeiture because of the non-payment of an assessment can prevail, it must not only appear that every step necessary to constitute a legal assessment has been taken, but also that the member alleged to be in default has been notified in the precise manner specified by the rules and regulations of the order. The by-laws of appellant require that the supreme secretary "shall prepare notice of each benefit fund assessment levied by the executive board, which notice shall be mailed to each beneficial member not less than thirty days previous to the time said assessment shall be due," and that, "whenever notice is given of the levying of an assessment fund * * * each member of the union shall pay to the secretary of his union, within the time specified in the notice or call, the amount for which he is liable." Another section of the by-laws provides that "he must, when given notice as provided in article 7, section 2, that a benefit assessment has been levied and ordered collected by the executive board, pay the same on or before the first day of the month following the date of said notice." It is clear to our minds that before the self-executing suspension clause in question could operate against a member, he must have had thirty days' notice, as contemplated and required by these provisions. There is no proof in this case that Croney had thirty days' notice

of the November assessment before he paid on the 20th of December. He was not required to pay any assessment of which he had not notice, and in case of notice, he had thirty days to pay. Covenant Mutual Benefit Association v. Spies, 114 Ill. 463; Supreme Lodge Knights of Honor v. Dalberg, 138 Ill. 508; Northwestern Traveling Men's Association v. Schauss, 148 Ill. 304.

Appellant contends, however, that appellees are estopped from denying the sufficiency of notice of a levy of the assessment. It is urged that because Croney made several attempts to pay the assessment after he was injured, he waived any question as to the legality of the levy or sufficiency of the notice. We are unable to see why any attempt to pay an assessment waives a member's right to pay within thirty days after notice. The only proof of such attempt was the testimony of Chris Wahl Smith, Croney's brother-in-law; but if we are to presume from that that Croney had received notice, the record is barren of any proof as to when he received it. For aught that appears, he may have received it but a day or two before he was shot. The following, as it appears in the opinion in the Northwestern Traveling Men's Association v. Schauss, *supra*, is *apropos:*

"Either personal service of notice, or the substituted service provided for by the constitution, must be shown to have been fully consummated before the thirty days given for the payment of the assessment can have commenced to run, and as there is no evidence from which the date of the consummated service can be ascertained, it is not proved that the remittance of the assessment by Schauss to the association was not made within thirty days after notice."

Appellant complains of the action of the trial court in refusing instructions Nos. 3 and 4, offered by it, and in giving No. 1 for appellees. The instructions relate to the alleged suspension of Croney and his reinstatement.

Entertaining, as we do, the view that Croney had not the required notice to warrant suspension for non-payment of assessments, and that he was not, in fact, suspended, a discussion of the errors alleged on that score is unneces-

sary. The same may be said with reference to the errors assigned upon the rulings of the court as to the admission of evidence. Seeing no error to justify a reversal, the judgment will be affirmed.