## The Royal Circle v. Elizabeth Achterrath.

1. FRATERNAL INSURANCE—*Deciding Question of Member's Good Standing After His Death.*—After the death of a member of a fraternal insurance association, the association can not be permitted itself to say that it will avoid liability merely for the reason that it believes the member was not in good standing because of offenses alleged against him.

2. SANITY—*Burden of Proof upon Party Whose Interest it is to Show a Mental State.*—Where the condition of mind is a material fact, like any other fact, the burden of proof is upon the party in whose interest it is to show it.

Assumpsit, on a benefit certificate. Appeal from the Circuit Court of Hancock County; the Hon. JOHN J. GLENN, Judge presiding. Heard in this court at the May term, 1902. Affirmed. Opinion filed November 1, 1902.

JOHN B. RISSE and WILLIAM B. RISSE, attorneys for appellant; JOHN C. LANPHIER, of counsel.

STERLING P. LEMMON and APOLLOS W. O'HARRA, attorneys for appellee.

MR. PRESIDING JUSTICE WRIGHT delivered the opinion of the court.

This suit was by the appellee against appellant to recover the amount of insurance upon the life of her husband, William Achterrath, who was a member of the appellant society, holding a certificate thereof at the time of his death, in which appellee was named as the beneficiary in the sum of $2,000. The recovery was for $1,500, and this appeal is prosecuted to reverse the judgment, the ground relied on for such purpose being that the verdict is against the law and the evidence of the case, and that the court erred in its instructions to the jury, both in those given and refused. The application of the insured for membership in the society, which is a part of the contract of insurance, contains a stipulation to the effect that if the applicant shall commit suicide, sane or insane, the society shall not be responsible; and a further stipulation to the effect

that he will make punctual payment of all dues and assessments for which he shall become liable, and conform in all respects to the constitution. laws, rules and usages of the order then in force, or which may thereafter be adopted. In the constitution of the order it is also provided that if a member dies by self-destruction, the certificate of membership shall be null and void, but the board of directors, if in their judgment the circumstances attending such death warrant it, may, at their option, without prejudice, pay any sum not exceeding the full amount. The constitution of the order contained this further section:

"After two years from the date of a certificate, the member continuing in good standing, the only conditions binding on the member are the agreements as to his full compliance with the laws and rules of the association, and that all dues and assessments shall have been paid as required. In all other respects the payment of any sum due under any certificate issued to a member, shall be indisputable and incontestable."

The date of the certificate of membership of the insured was January 19, 1899, and was for $2,000, and previous to the death of the member, which occurred May 8, 1901, he had been paid $500 for the loss of a hand. All assessments and dues were paid, the last assessment after the member's death, and it was admitted that so far as dues and assessments were concerned he was in good standing—that he owed the defendant no money. It is incontestable from the evidence in the record that the insured died by self-destruction—committed suicide—but whether sane or insane does not appear.

The only question that is presented, or that is necessary for a proper decision of the case, is whether the act of suicide deprived the member of good standing, within the meaning of the incontestable clause above quoted. It is said in Independent Order of Foresters v. Zak, 136 Ill. 185, referring to Royal Templars of Temperance v. Curd, 111 Ill. 284, that a member is in good standing when he complies with the laws, rules, usages and regulations of the order, and that it was competent to show by legitimate

proof that the deceased had failed to pay his lawful dues during the last year of his life.  Such failure, if without valid excuse on his part and without fault on the part of the order, would have been competent evidence of the loss of good standing; but in the case there being considered, something more was involved in the meaning of good standing than the non-payment of dues.  Good standing meant good conduct; that is, freedom from the violation of those requirements which indicate the benevolent purposes of the society or express its intention to insist upon a high standard of character among its members.  If the member had appropriated to his own use moneys put into his hands by a brother member to be used for the purpose of paying the dues of the latter, or had sustained improper relations with another man's wife, those acts would tend to injure the good name of the society, impair its efficiency and bring it into disrepute; and if shown in the proper way and by the right kind of proof, would show a want of good standing on the part of the member; but such member must be tried, after notice to him, upon these charges, and a conviction had under the rules of the society, before his standing would be affected.  If these societies were allowed to prove, after a member's death, that he had committed certain unworthy acts, and that those acts were known to the other members, and that thereby his good standing had been ended, the temptation to avoid or contest the payment of death losses would oftentimes be too great to be resisted.  Under such constitution as that of appellant in that case, the loss of good standing must be shown by some official action on the part of the organization.

In Northwestern Traveling Men's Association v. Schauss, 148 Ill. 304, a provision of the constitution of the organization that a member not remitting his assessment within thirty days from the date of the notice " shall forfeit his claim to membership and have his name stricken from the roll," is not self-executing, but requires, in order to a termination of the membership, the affirmative action of the association, declaring the forfeiture and striking the

member's name from the roll. If provision is made in
insurance contracts in apt terms that non-payment of as-
sessments, dues or premiums shall, *ipso facto*, work a ter-
mination of the membership, it will be upheld and enforced
by the courts; but the decisions generally hold that such
provisions will be strictly construed, so as to prevent a for-
feiture if possible.

The constitution of the appellant society in the case
we are considering is similar in its provisions, in legal
effect at least, to those in the cases to which we have
referred. It is said, however, that those cases can have no
application to this case, for the reason there was no time
when charges could be preferred against the member for
the offense of suicide as affecting his standing in the order.
There is of course much force in this position and we have
only cited from those cases to show the principles that
govern cases like this. While it was impossible from the
very nature of the death of the assured to have preferred
charges in the society and have brought him to trial
thereon, and there obtained a conviction, still the principle
upon which the decisions cited are based, is, that after the
death of the assured the association shall not be permitted
itself to say that it will avoid liability merely for the reason
that it believes the member was not in good standing
because of offenses alleged against him. There should and
ought to be, some tribunal in which the charges of offense
affecting the good standing of the member can be investi-
gated and a just finding reached. In the case presented
that could not be done, as well said by counsel, by the asso-
ciation itself, after the member had committed suicide, when
the act by which he met his death was the fact to be in-
vestigated, by which his good standing was to be affected.
If, however, the society was permitted to aver the mere act
of suicide to avoid liability, as great injustice might result
as if it was denied the right to make such defense in any
circumstances. It must be borne in mind the defense in
this case is not whether the assured committed suicide,
sane or insane, within the meaning of the stipulation con-
tained in his application, but whether, after the contract of

insurance became incontestable by a member in good standing, the fact of suicide *ipso facto* deprived him of good standing. If the member deliberately, while in sound mind, intentionally and willfully took his own life, then we are of the opinion this fact might have been shown on the trial, and we are unprepared to say that a member dominated by sentiments so unworthy and revolting to the human mind could be in good standing among respectable human beings anywhere. But on the other hand, if the member was so insane as to be actuated by impulse over which his will had no control, and thus took his own life, the instinct of reason and humanity alike would revolt from holding him responsible for the act; in truth, it would not be his act in any sense; and this has been held by our own Supreme Court and is now the familiar law. Grand Lodge v. Wieting, 168 Ill. 408. In the circumstances of this case the burden was upon the appellant to excuse or exonerate itself from liability. Had it offered evidence to show that the insured committed suicide while in a sane condition of mind, then the defense, and the questions it now argues, would have arisen in the case for decision; but not having done this, we can not presume that the insured was sane when he took his own life. Where the condition of mind is a material fact, like any other fact, the burden is upon the party in whose interest it is to show it, and the affirmative rests. The instructions of the court were in harmony with the views herein expressed and there was no error in them.

Finding no error in the record the judgment of the Circuit Court will be affirmed.