O. WHEELER, Appellant, v. F. E. McSTAY and HATTIE Mc-
STAY, Appellees.

Real property: CONTRACT OF EXCHANGE: CANCELLATION: NOTICE.    A
1    land contract for the exchange of properties providing that the
     second party should have thirty days from its date to examine the
     properties of the first party, and further providing that the agree-
     ment should not become binding until expiration of the thirty days,
     and that at the end of such time the agreement should be in force
     unless the second party sooner notified the first party, in writing,
     of his intention to abandon and cancel the same, required the
     second party not only to reach his decision but also to give actual
     notice in writing to the first party of his intention to abandon the
     contract before the expiration of the thirty days.

Same: NOTICE OF CANCELLATION: SUFFICIENCY.    Where the acquirement
2    of rights under a contract depends upon the giving of notice within
     a specified time, no specified manner or means of delivery being
     agreed upon, the mailing of such notice does not operate as a
     delivery of service thereof from the date of its deposit in the post
     office; it must actually have reached the other party within the

specified time, or at least have been mailed in time to reach him within that time in the due course of mail.

*Appeal from Black Hawk District Court.*—HON. F. C. PLATT, Judge.

THURSDAY, MAY 15, 1913.

ACTION in equity to enforce performance of contract for conveyance of real estate. Petition dismissed, and plaintiff appeals.—*Reversed.*

*Sager, Sweet & Edwards,* for appellant.

*Reed & Tuthill,* for appellees.

WEAVER, C. J.—The case made by the plaintiff is substantially as follows: Plaintiff being the owner of a quarter section of land in North Dakota and a house and lot in Waverly, Iowa, and the defendant F. E. McStay being the owner of certain other real estate in Waterloo, Iowa, said parties under date of January 25, 1911, at said city of Waterloo, entered into a written agreement for the exchange or mutual transfer of said properties on terms therein named, subject, however, to the following stipulations:

The party of the second part is to have thirty days from date in which to examine the properties described above as being owned by first party, and this contract is not to become binding upon said second party until the expiration of said thirty days unless such time is waived by said party. At the end of thirty days this contract is to become binding upon said second party unless he sooner notifies first party, in writing, of his intention to abandon and cancel the same. In case this contract becomes binding upon both parties hereto in the manner above stated, then said parties are each to deliver to the other good and sufficient warranty deeds to their respective properties. and abstracts of title to the same showing clear

and merchantable title thereto, except, of course, the mort-
gages above referred to, which are liens against the North
Dakota property conveyed by first party and the Waterloo
property conveyed by second party.   Deeds and abstracts to
be exchanged within a reasonable time after this contract
becomes binding on both parties hereto.

The making of the alleged agreement is conceded, but
the defendant contends that, within the time stipulated, he
notified the plaintiff, in writing, of his election to abandon
the deal, and that no enforceable contract was ever completed
between them.   The defendant as a witness testifies that late
in the evening of February 24, 1911, at Waterloo, Iowa, he
wrote a letter to the plaintiff informing him of his intention
to abandon the contract, which letter he addressed to plain-
tiff at Waverly, Iowa, the place of his residence, and, having
duly sealed and stamped the same, deposited it in a street or
hotel letter box provided for such purposes by the United
States.   The letter itself, being produced, appears to bear
the date of February 24, 1911, but the postmark stamped
thereon is dated February 25, 9 a. m., 1911, while the Waverly
postmark shows its receipt at that office February 25, 11:30
a. m., 1911.   It was actually received by the plaintiff about
three o'clock p. m. of the 25th.   Upon the facts thus briefly
stated, the trial court found plaintiff not entitled to the relief
asked.

The first and principal question presented by the record
is whether the defendant signified his election to abandon the
contract in such time and in such manner as to relieve himself
from obligation to perform the same.   It appears that, while
the terms of the exchange were agreed upon and reduced to
writing, the defendant was given thirty days in which to
examine and satisfy himself as to the Dakota property, with
the option on his part to withdraw from the transaction at
any time within thirty days from the date of the writing.   As
expressed by the instrument itself, it was not to become bind-
ing upon the defendant "until the expiration of said thirty

days," unless such time was waived by him. It then provides that: "At the end of thirty days this contract is to become binding upon said second party unless he sooner notifies the first party in writing of his intention to abandon and cancel the same."

It is the theory of the appellee, and such is said by counsel to have been the view of the trial court, that when properly construed the contract gives to the defendant the full period of thirty days to examine the property,

**1. REAL PROPERTY:** contract of exchange: cancellation: notice.

and that a notice of his refusal to proceed farther, given with reasonable promptness after the expiration of that period, would be timely and relieve him from liability. To reach this conclusion, we must ignore the provision by which at the "end of thirty days" the contract was to become binding upon the defendant, "unless he *sooner* notified first party, in writing, of his intention to abandon the same." But counsel say the writing also provides that defendant shall have thirty days from date in which to examine the property, and, as this privilege continues up to the last hour of the thirtieth day, it could not have been meant that he must exercise his option or election before that period expired. These provisions, it is argued, are so far repugnant or at least so obscure as to justify the construction by which notice within reasonable time after the expiration of the stated period may be held sufficient. We are disposed to the view, however, that this reading requires too great a strain upon the court's power of construction. The language of the writing is not at all obscure. It provides, in fairly clear terms, for a period of thirty days in which the bargain or agreement shall remain tentative only. Within that time defendant was at liberty to satisfy himself concerning the property he was to receive in exchange, and, unless he "sooner gave notice" of his withdrawal from the deal, the agreement was to become obligatory upon him "at the end of thirty days." In other words, to avoid the binding effect of the contract, he was required to reach his

decision and to notify plaintiff thereof in writing, both before the expiration of thirty days. Notice given after that period had elapsed would be unavailing. Such also appears to have been the practical interpretation which defendant appears to have put upon his agreement. He says he had investigated the property and decided not to proceed with the exchange three days before the time expired, but, because of other business engagements, he neglected to give the notice until late in the evening of the last day, when he endeavored to do so in the manner indicated.

But one other debatable propostion remains. Assuming that defendant mailed his letter of withdrawal, as he says he did, by depositing it in a mail box at ten o'clock in the evening of February 24, 1911, and that such letter reached the hand of plaintiff at Waverly on the afternoon of the following day, does this constitute a notice within the thirty day period? Excluding the day on which the writing bears date the period of thirty days would expire with the close of February 24, 1911. To hold such notice sufficient it must be on the theory that the deposit of the letter in the mail box is the legal equivalent of placing it in the hands of the plaintiff. That a contract may result from an offer by mail or telegraph and an acceptance communicated by similar means, and that the contract obligation dates from the time of mailing or dispatching the acceptance, is of course familar doctrine. But where parties by agreement condition the acquirement or loss of contract rights upon the giving of a notice within the specified period, not prescribing the manner or means of the delivery thereof, we think there is no rule or precedent to the effect that the mailing of such notice operates as a delivery or service from the time of its deposit in the post office. For instance, if A lets his house to B under an agreement by which the latter is to vacate the premises upon a week's written notice from the former, no court would be disposed to hold, in the absence of an express or implied stipulation to that

2. SAME: notice of cancellation: sufficiency.

effect, that such notice, sent by mail, would be of any avail to terminate the tenancy until its actual receipt by the lessee.

The cases distinctly in point are not very numerous, but they are sufficient to show that the distinction between cases of this character and those where the question at issue is an acceptance of an offer of purchase or sale has received judicial recognition. See *Burhans v. Corey*, 17 Mich. 282, in which it is held that a person entitled to notice, where .there is no stipulation or consent for its delivery by mail or other specially named means, is not bound by such notice until it is actually received. So also it has been held in Vermont that one who has undertaken to give notice within a specified number of days does not comply with his obligation by depositing notice in the post office at the close of the last day of the stipulated period, too late to be forwarded or delivered within the time named. *Field v. Mann*, 42 Vt. 68. This authority is quite in point upon the facts in the case at bar. A similar holding is to be found in *Society v. Reed*, 42 Vt. 76. In *Association v. Schauss*, 148 Ill. 304 (35 N. E. 747), the court, speaking with reference to a contract requirement of notice, coupled with a provision that ''notice sent to the last address given shall be considered legal notification,'' says: ''As there is no provision in the Constitution to the effect that the service of notice shall date from the time of mailing, it can only date from the time of its actual receipt by the member to whom it is addressed, or at least until sufficient time has elapsed to enable it to reach him in due course of mail.'' Upon the same subject it is said by the Massachusetts court that: ''Ordinarily when the demand must be made or notice given merely posting the document or notice in the mail would not be a communication to the person addressed and would be ineffectual unless the same be received.'' *Shea v. Association*, 160 Mass. 289 (35 N. E. 855, 39 Am. St. Rep. 475). Any other rule would be unreasonable and productive of frequent unjust results. It follows that we must hold that there was a clear failure on the part of the defendant

to give notice of his withdrawal from the contract within the time limited therefor, and that the contract became and is a binding and enforceable obligation.

For the reasons stated, the decree below must be reversed, and the cause remanded for the entry of a decree in accordance with the views here expressed.—*Reversed.*

EVANS, J.—I am unable to agree with the foregoing opinion. The contract gave defendant "thirty days" to satisfy himself as to the Dakota property. The effect of the majority opinion is to make the time for such purpose a little less than thirty days. The opinion rests its full weight upon the word "sooner," and makes it of the very essence of the contract.

I think the interpretation of the contract adopted by the trial court is the more reasonable and natural one. The word "sooner" can be adapted thereto without excessive strain upon its meaning. If this be not so then the contract is repugnant in its provisions at this point. Such repugnance is a sufficient reason why specific performance should be refused and the *status quo* be maintained. I would affirm.