MARY SHEA, executrix, *vs.* MASSACHUSETTS BENEFIT
ASSOCIATION.

Hampden.   September 27, 1893. — January 3, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Beneficiary Association — Right of Executrix to sue — Defence not set up in
Answer — Insurable Interest — Valid Contract — Mortuary Call — Burden
of Proof — Estoppel — Condition — Receipt — Forfeiture of Policy —
Waiver — Presumption as to duly posted Letter — Acceptance and Retention
of Money on Terms.*

If a policy of a benefit association issued upon the life of a member and payable to
A., who is not within the classes of persons who may be beneficiaries, provides

that, if A. should not be living at the time of the member's death, then the payment shall be made to his heirs at law, the executrix of the member may maintain an action for the benefit of the heirs at law.

In an action on a policy of a benefit association issued upon the life of a member and payable to A., his daughter in law, the defence that A. had no insurable interest in the life of the member, that all the premiums were paid by A., and that the contract was void as a wagering contract, is not open, if it is not set up in the answer. The fact that a policy of a benefit association was made for the benefit of a person who could not lawfully be a beneficiary, and that the premiums were paid by such person, will not invalidate the policy provided it was not intended to be merely a wagering contract.

Where a failure to pay a mortuary call is set up in defence to an action on such a policy, the burden of proof is on the defendant to show that such call was legally made.

The payment by the member of a beneficiary association of an assessment which has not been accepted unconditionally, creates no estoppel to deny its validity.

If a benefit association receives and keeps money which is sent to it in payment of a call, but seeks to make its acceptance conditional, it must see to it that notice to that effect actually reaches the payor, and if the benefit association resorts to the mail for that purpose it will be responsible for any miscarriage of the notice in the mail.

In the absence of any stipulation in the contract between the assured and a beneficiary association, or in the rules of the association, or of any express or implied request on the part of the assured, or his agents, or those acting for him, there is no rule of law under which the assured can be held to be bound by the association's act of imposing a condition upon its acceptance and retention of money paid by the assured in answer to a call made by the association, unless notice of such condition is actually brought home to the assured, or to those acting for him.

CONTRACT, by the executrix of the will of John Shea, to recover upon a certificate of membership issued upon the life of Shea, and payable to Margaret B. Shea, his daughter in law.

At the trial in the Superior Court, before *Dewey*, J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions. The facts appear in the opinion.

*E. Avery*, (*F. E. Litchfield* with him,) for the defendant.

*J. B. Carroll*, for the plaintiff.

ALLEN, J. The defendant contends that the action should have been brought in the name of Margaret B. Shea, the beneficiary. She was the daughter in law of John Shea, and, as both parties contend, was not within the classes of persons who may be beneficiaries. The designation of her as beneficiary was therefore invalid, and she could not maintain an action. St. 1882, c. 195, § 1. Such invalid designation, however, does not destroy the contract, which provides that, if Margaret should not be living at John Shea's death, then the payment should be made to

his heirs at law. The executrix may maintain the action for their benefit. *Rindge* v. *New England Aid Society*, 146 Mass. 286. *Burns* v. *Ancient Order of United Workmen*, 153 Mass. 173.

It is, however, further contended, that Margaret had no insurable interest in the life of John Shea, that all the premiums were paid by her, and that the contract was void as a wagering contract. This ground of defence was not open, not being set up in the answer. *Forbes* v. *American Ins. Co.* 15 Gray, 249. But, apart from that, the facts stated were far from showing conclusively that a mere wager was intended, and the presiding justice rightly refused so to rule. The relationship in which Margaret stood to John, and the matters disclosed in her testimony, tended strongly to show that the policy or certificate of membership was obtained in good faith, and not for the mere purpose of speculating on the hazard of a life in which she had no interest; and if so, the contract was valid if made with him, though made for her benefit, and though the premiums were paid by her. *Campbell* v. *New England Ins. Co.* 98 Mass. 381. *Loomis* v. *Eagle Ins. Co.* 6 Gray, 396. *Forbes* v. *American Ins. Co.* 15 Gray, 249. *Cunningham* v. *Smith*, 70 Penn. St. 450. *Connecticut Ins. Co.* v. *Schaefer*, 94 U. S. 457. *Ætna Ins. Co.* v. *France*, 94 U. S. 561. See also *Mutual Ins. Co.* v. *Allen*, 138 Mass. 24. Moreover, it is to be observed that her testimony does not show that it was understood that she alone was to pay the premiums. She said that John Shea promised assistance in paying them, if necessary. The fact that she paid them, under the circumstances, was immaterial. *Ætna Ins. Co.* v. *France*, 94 U. S. 561.

The ruling that the burden was on the defendant to show that mortuary call No. 71 was properly and legally made, was right. The defendant in its answer set up that on March 31, 1892, a duly authorized assessment was called by said association, a notice of which was mailed to John Shea on said date, payable in thirty days thereafter; that said assessment was not paid within said thirty days, and thereupon the policy or certificate lapsed and became void. In order to establish a forfeiture of his membership, the first step was to show a duly authorized assessment; and the second, to show that it was not duly paid. The facts relating to the validity of the assessment were peculiarly within the defendant's knowledge. Unless therefore the plaintiff was

in some way debarred from questioning the validity of the assessment, the burden of establishing its validity clearly rested on the defendant; and upon the testimony of Litchfield, the defendant's secretary and assistant treasurer, as to the mode of issuing mortuary calls, it is not apparent how the call in question conformed to the rules annexed to Shea's policy or certificate of membership, which provided that he should not be liable for any sum in each year beyond the annual assessment of five dollars, except that upon the ·death of any member he should pay, if required, an additional assessment of seven dollars and fifty cents. It is not, however, necessary to dwell upon this, because the question was left· to the jury, with instructions which were sufficiently favorable to the defendant.*

---

* The judge instructed the jury as follows:

" If, having no more than one death to provide for, they found they could provide for it by calling upon Shea for the sum of thirteen dollars, instead of a larger sum, twenty-one dollars or twenty-two, that would be in accordance with the legal meaning of the policy, and not subject to any complaint from him. In connection with this, whether this call was duly ordered or not, you may take into account the fact that a call was recognized and a check sent. That, of course, would not be conclusive upon the plaintiff, because the plaintiff might not be in a position to know. In considering such a matter as that, you take into account the evidence about it, and you have a right to take into account also a principle of law which exists, and is applied in a great variety of circumstances, in aid of the proceedings of individuals and of corporations. The late Mr. Justice Story, speaking upon this subject, says: ' In the general rules of evidence, presumptions are continually made, in the cases of private persons, of acts even of the most solemn nature, when those acts are the natural result or necessary accompaniments of other circumstances. In aid of this salutary principle the law itself, for the purpose of strengthening the infirmity of evidence, and upholding transactions intimately connected with the public peace and the security of private property, indulges its own presumptions. It presumes that every man, in his private and official character, does his duty until the contrary is proved; it will presume that all things are rightly done unless the circumstances of the case overturn this presumption. Persons acting publicly as officers of a corporation are to be presumed to be rightly in office; acts done by the corporation, which presuppose the existence of other acts to make them legally operative, are presumptive proofs of the latter.' So you are to take the testimony of the witness who was here as to the course of business, as to the action of these directors, as to the issuing of these notices, and his statement, as far as he made any, as to the course of business in that respect, and judge of this evidence in the light of all the circumstances, including this presumption to which I have referred, which is not conclusive upon the parties, but

The defendant, however, asked a ruling that, by making payment of the assessment, all parties in interest are estopped to deny that the assessment was legally made.  This view would perhaps be reasonable, provided the defendant had accepted the payment without question.  But the defendant undertook to impose a condition that the payment should be null and void unless John Shea was at the time in good health, and now contends that the payment was no payment because he was not in good health.  The position of the defendant is that the payment was sufficient to operate as a waiver by the assured of the invalidity of the assessment, but not sufficient to keep the policy in force.  The payment would create no estoppel to deny the validity of the assessment unless it was accepted as a valid payment. If repudiated, the assured would be as much at liberty to question the validity of the assessment as if no attempt to pay had been made.  No estoppel would arise from a repudiated offer to pay, because the defendant did not act on the offer or change its position, and therefore it was not at liberty to set up an estoppel. No other ground of estoppel was urged or ruled on except merely the effect of the payment, under the circumstances stated, and our decision is limited to that ground.

The defendant further contends that the policy lapsed by reason of the failure to pay the assessment in due time, that the subsequent receipt of the money was only conditional, and that the forfeiture of the policy was not thereby waived.  One of the defendant's officers testified that the money for call No. 71 was received April 8, which was too late, and that a receipt was thereupon mailed to Shea's address, expressing that the payment was received upon the condition hereinbefore mentioned, and not otherwise.  There was some evidence tending to show that this receipt failed to reach Shea, or any one acting in his behalf.  It thus became material to consider the rights of the parties provided such a receipt was posted by the defendant but failed to

---

may be allowed such weight as you think it ought to have.  Taking it altogether, does the defendant satisfy you that this call No. 71 was a proper call, a regular call, — one that was in accordance with the duty of the corporation toward its members, — a call made to meet the obligations growing out of death ?  If you are not so satisfied, then of course the basis for any forfeiture, so far as this call is concerned, would be gone."

reach its proper destination; and the defendant asked a ruling that, if such a receipt was mailed, and Shea was not in good health, the plaintiff could not recover. The court declined so to rule, and instructed the jury that the defendant must satisfy the jury that the receipt actually came to hand. The presumption that a letter duly posted reaches its proper destination was fully stated; but such presumption being rebuttable, it was left to the jury to determine as a fact whether the receipt in this case reached its destination.

It was not in dispute that the defendant received and kept the money sent for this call; and ordinarily an acceptance of the money, though it was paid after the expiration of the time fixed, implies a waiver of objection growing out of the delay. *Hodsdon* v. *Guardian Ins. Co.* 97 Mass. 144. *Insurance Co.* v. *Wolff*, 95 U. S. 326. *Phœnix Ins. Co.* v. *Raddin*, 120 U. S. 183, 196. *Wing* v. *Harvey*, 5 DeG., M. & G. 265, 270. The money was tendered unconditionally; and if the company should retain it without objection, it would be held to assent to the terms of the payor. One who receives and retains money which is sent to him to be kept on certain terms must be deemed to assent to those terms if he keeps the money, unless he makes it known to the sender that he will only keep the money on some other and different terms; and if he seeks to establish different terms while keeping the money, it rests upon him to make that fact known. If the defendant would establish different terms from those upon which the money was sent, it must do something to make it known that its acceptance and retention of the money were conditional. It could not impose a condition binding upon Shea merely by determining in its own mind to do so. A secret vote of the directors that they would keep the money, but that the payment should be deemed valid only in case Shea was then in good health, would be of no avail. An uncommunicated condition is no condition. The company must certainly take some step to inform Shea or his agents that the money, though retained, would not be held upon the terms upon which it was sent. This duty arose from its actual retention of the money, which was sent on specified terms. To keep the money and insist on different uncommunicated terms would savor of fraud. Good faith required that the defendant should not remain passive, but

should do something if it objected to the payments being considered unconditional. But then how much was it incumbent on the defendant to do? Must it be held to bring notice home to Shea or his agents, or was its duty satisfied by merely posting its communication in the mail? There is nothing in the policy, or in the rules of the company annexed thereto, or in the by-laws, providing that such an effect shall be given to mailing a communication of this character. No fact is stated from which a request can be implied or inferred from Shea that the company should communicate such a condition in that way. In the absence of any stipulation in the contract between the parties, or in the rules of the company, or of any express or implied request on the part of Shea, or his agents, or those acting for him, we are acquainted with no rule of law under which he can be held to be bound by the defendant's act of imposing a condition upon its acceptance and retention of the money, unless notice of such condition is actually brought home to him or to those acting for him.

There is some analogy between this case and the ordinary case where one is under a duty to make a payment of money. If he uses the mail for that purpose, without express or implied authority, he must take the risk of the payment reaching its proper destination. *Gurney* v. *Howe*, 9 Gray, 404. *Crane* v. *Pratt*, 12 Gray, 348. So ordinarily, when a demand must be made or notice given, merely posting the demand or notice in the mail would not be a communication to the person addressed, and would be ineffectual, unless the same should be received. *Castner* v. *Farmers' Ins. Co.* 50 Mich. 273, 277. Leake, Con. 21–24. There has been much discussion as to the time when the acceptance of a contract by letter takes effect, and it is now considered by courts in England that the ground for holding that such acceptance takes effect from the posting of the letter is because that mode of accepting is to be deemed to have been authorized by the other party to the contract, either expressly or by implication; and that the doctrine establishing the acceptance as effectual from that time is limited to cases where acceptance by post is expressly or impliedly authorized. *Household Ins. Co.* v. *Grant*, 4 Ex. D. 216, 218, 228. *Byrne* v. *Van Tienhoven*, 5 C. P. D. 344, 348. *Stevenson* v. *McLean*, 5 Q. B. D. 344. Leake, Con. 24.

In the present case, it is impossible to say that Shea or those acting for him assented in advance that the defendant, in case of its desiring to qualify its acceptance of the money by a condition, might communicate such condition merely by posting it in the mail. The check was collected in due course, and its final payment and return to the drawer afforded a voucher for the payment to the defendant. Those acting for Shea were aware that the money was retained by the defendant, and, if the conditional receipt miscarried in the mail, or for any reason did not come to their hands, no communication of the condition was made to them; and if so, the effect of the retention of the money by the defendant was to waive the forfeiture.

We do not know the ground on which the jury proceeded in rendering their verdict for the plaintiff. It may have been either on the ground that call No. 71 was not shown to have been valid, or, if the call was valid, that no notice was given to Shea or those who acted for him that the defendant would not accept the payment except upon condition. We have only to do with the questions of law presented to us, as separate propositions. Finding no error in the rulings upon these, the entry must be,

*Exceptions overruled.*