ABRAHAM GIBBS, Executor, Respondent, v. KNIGHTS OF PYTHIAS OF MISSOURI, Appellant.

**St. Louis Court of Appeals, April 8, 1913.**

1. **LIFE INSURANCE: Beneficiary: Insurable Interest.** In the absence of a contrary stipulation, a provision in a life insurance policy, designating a certain person as beneficiary, if valid in its inception, remains so although the insurable interest or relationship of the beneficiary has ceased.

2. ———: **Modification.** A life insurance contract may be subsequently modified as to material terms by the parties, after which the rights of the parties are governed by the modified contract.

3. **FRATERNAL BENEFICIARY ASSOCIATIONS: Certificate: Construction.** A fraternal benefit certificate is always subject to the charter powers and constitution and by-laws of the order, when expressly agreed to.

4. ———: **Beneficiary: Insurable Interest.** Sec. 2823, R. S. 1889, authorizing a fraternal benefit insurance association to provide for the relief and aid of its members and their families, widows, orphans, or other kindred dependents of deceased members, forbids the designation of a stranger not related by blood or marirage to nor dependent upon a member, as a beneficiary.

5. ———: ———: ———: **Modification of Contract.** Where a foreign fraternal insurance order, not authorized to do business in this State, issued a life insurance certificate, and afterwards, through an arrangement with its members, organized a

"Grand Lodge" under the statutes of this State, which assumed jurisdiction over the subordinate lodge of which insured was a member and impliedly assumed the obligation of paying the certificate, the certificate was, by virtue of such arrangement, brought within the operation of such statutes,. and hence the designation by the certificate of the personal representative of insured as beneficiary, which is not allowable under such statutes, was void.

6. ———: Beneficiary: Right to Change.    Until insured's death, a new beneficiary may be designated by insured to take under a fraternal beneficial certificate, providing the beneficiary be qualified as such . under the charter provisions of the association.

7. ———: ———: Insurable Interest.    Since it is against the policy of the law to permit the funds of a fraternal association to be diverted to others than the beneficiaries contemplated by statute, an insured may not indirectly, as by will, designate one not qualified, as a beneficiary under the certificate.

8. ———: ———: Designation of Improper Beneficiary: Recovery by Executor.    Although a fraternal beneficial certificate is *ultra vires*, in that it is payable to insured's legal representative, when the charter of the association requires the beneficiary to be a relative or dependent of insured, the association cannot defeat recovery under the certificate on that ground, where the contract has been fully executed, but the personal representative may recover in trust for the proper recipient.

> *Held*, by REYNOLDS, P. J., concurring, that the term "legal representative" means, not the executor or administrator, but those who, under the law, can be the objects of the benefit; following dissenting opinion in Ordelheide v. Insurance Co., 158 Mo. App. 677.

9. ———: Exemptions.    In view of both the obvious intent of the statute regulating fraternal benefit associations and the direct provisions of Sec. 7120, R. S. 1909, the benefit is exempt from attachment and execution or other claims of insured's creditors.

10. EXECUTORS AND ADMINISTRATORS: Right to Sue as Trustee: Fraternal Beneficiary Associations.    Although, as a rule, an executor or administrator represents decedent generally, and, in an action as such, recovers to the use of the estate, so as to make the recovery available to all persons having just claims against the estate, yet where a fraternal benefit certificate is payable to the personal representative of insured and such designation is unlawful, so that the personal

representative cannot recover for the benefit of the estate, it is proper to permit him to sue and recover in trust for the benefit of those who are, under the law, entitled to the fund.

Appeal from St. Louis City Circuit Court.—*Hon. Charles Claflin Allen*, Judge.

REVERSED AND REMANDED (*with directions*).

*W. R. Hill* for appellant.

(1) Plaintiff being the sole legatee under the will of the deceased, and not coming within the class of persons designated in the statute of Missouri and the by-laws of the defendant Knights of Pythias of Missouri, etc., is not entitled to recover the fund sued for. R. S. 1879, sec. 2823; R. S. 1899, sec. 1408; Masonic Benefit Assn. v. Bunch, 109 Mo. 560; Pauly v. M. W. A., 87 S. W. R. 990; Keener v. Grand Lodge, 38 Mo. App. 543; Dennis v. M. B. A., 119 Mo. App. 210. (2) Where the by-laws of the association provide that the amount should be paid to certain person, the deceased could not bequeath it to another. Grand Lodge v. Elsner, 26 Mo. App. 108. (3) A member cannot do by will what the society cannot do, and therefore a tesetamentary bequest of a death benefit to one not a member of the class mentioned in the statute is void. Legion of Honor v. Perry, 140 Mass. 589; Elsey v. Odd Fellows, 142 Mass. 224. (4) A benefit society cannot transcend the limits of the statute and recognize as beneficiaries parties not named therein, nor can the party whose life is insured divert the fund from the objects named in the statute, so a son cannot by will divert from his childless widow to his father to pay funeral and sick expenses, the fund coming to his widow by virtue of his membership certificate. Wagner v. Benefit Society, 70 Mo. App. 161.

*F. H. Bacon* for respondent.

(1) The policy sued on being issued in 1892 by a foreign corporation not authorized to do business in this State could be made payable to anyone selected by the member, or policy holder, and such policy holder had the right to make the policy payable to his legal representatives. Toomey v. Supreme Lodge, 74 Mo. App. 507; Kern v. Supreme Lodge, etc., 167 Mo. 471. (2) A policy of insurance valid in its inception remains so. Insurance Co. v. Schaefer, 94 U. S. 457; McKee v. Insurance Co., 28 Mo. 383. This is true not only of a policy issued by a regular life insurance company, but a certificate issued by a fraternal beneficiary society. White v. Brotherhood of American Yeoman, 124 Ia. 293, 99 N. W. 107, 66 L. R. A. 164; Brown v. Grand Lodge, 208 Pa. 101; Farrar v. Branman, 86 N. E. (Ind.), 843. (3) Plaintiff being the legal representative of James Williams as such has the right to sue on all instruments payable to the legal representatives of the deceased. It is immaterial whether he takes the money as a trustee or as a plain representative of the deceased. Grand Lodge v. Dister, 77 Mo. App. 608; Wilson v. American Benevolent Assn., 125 Mo. App. 598. (4) If the policy was valid in its inception and the defendant, Grand Lodge, collected and retained the premiums thereunder, it cannot now repudiate the obligation without returning all assessments which it did not offer to do. The case comes under the principles laid down in somewhat similar cases by this court. Hysinger v. Grand Lodge, etc., 42 Mo. App. 627; Martinez v. Supreme Lodge, 81 Mo. App. 590. (5) While it is true under the authorities cited by counsel for appellant, that the defendant, Grand Lodge, had no power to issue certificates to persons of one of the classes not mentioned in the statute, yet that rule does not apply when the defendant has collected premiums on a policy valid when is-

sued, but payable to a different beneficiary than one of the classes mentioned in the statute, because the law of estoppel applies. Edwards v. American Patriots, 162 Mo. App. 231-235; Bank v. Trust Co., 187 Mo. 529.

NORTONI, J.—This is a suit on a certificate of life insurance. Plaintiff recovered and defendant prosecutes the appeal. .

The principal question for consideration relates to the right of a personal representative of the injured, who is one not included within the class of beneficiaries authorized by our statute, to recover on the certificate, when it appears the insured fully performed all of the conditions on his part and the contract is fully executed excepting its payment by defendant. Subsidiary to this are the questions: If the executor is allowed to recover, may he do so in the interests of a legatee under the will, to whom the insured bequeathed the fund, or whom he nominated in the will as beneficiary thereof, when it appears such legatee or beneficiary is not one of the class denominated by our statute as competent to receive such benefits; or, shall the recovery be for the benefit of the estate of the insured and the fund turned into its *corpus* as available to all creditors; or, may he recover alone as in trust for the benefit of those persons contemplated by the statute as beneficiaries and pointed out by the by-laws of the order as the recipients of the fund when no designation of a beneficiary has been made?

The suit proceeds jointly on the same certificate of insurance against two incorporated fraternal societies, on the theory that, though one alone issued the certificate in the first instance, the other thereafter assumed its obligation and, by collecting all of the dues and assessments from the insured member, became liable to respond thereon in accordance with its terms. There is no controversy touching the facts, for they

are all set forth in an agreed statement, on which a general judgment was given for plaintiff executor, who is himself the sole legatee under the will of the insured.

The certificate of life insurance was issued to the insured, James Williams, on September 30, 1892, by defendant "Supreme Lodge Knights of Pythias of North and South America, Europe, Asia and Africa," a fraternal beneficiary association, incorporated and with headquarters in the District of Columbia. It appears that this company never qualified as a fraternal beneficiary association under the Missouri statutes and was therefore not licensed to do the business of life insurance as such in this State at the time the certificate in suit was issued. Notwithstanding this fact, the Supreme Lodge Knights of Pythias of North and South America, Europe, Asia and Africa established subordinate lodges here, one of which was Mound City Lodge No. 4, located in the city of St. Louis. The insured affiliated with this lodge, and, as before said, on September 30, 1892, received through it the certificate of life insurance payable at his death in the amount of $300 to his "legal representative or representatives." He paid all assessments and dues on the certificate and as a member of the order as they accrued and were levied, to the Supreme Lodge which had issued it, until, by an arrangement with all of its members, that order, acting through the Supreme. Lodge, organized and incorporated as subordinate thereto the defendant Grand Lodge Knights of Pythias of the State of Missouri. And thereupon and thereafter the insured paid all assessments and dues to the latter. It appears that in 1893, or about one year after the certificate was issued by the Supreme Lodge, the Grand Lodge Knights of Pythias of Missouri was incorporated in this State and under our statute authorizing such societies, as subordinate to the Supreme Lodge with headquarters in the District of Columbia, and succeeded to all of the affairs of the Supreme

Lodge in Missouri. In September, 1893, the Supreme Lodge Knights of Pythias of North and South America, Europe, Asia and Africa withdrew entirely from further operations in the State of Missouri and the Grand Lodge Knights of Pythias of Missouri assumed full and complete jurisdiction over the various subordinate lodges of the order in Missouri, among which was Mound City Lodge No. 4, of which the insured was then a member, and assumed, too, the obligations of the Supreme Lodge to its members on certificates of insurance, and all of the members, among them the insured, James Williams, agreed to this arrangement. Thereafter the insured paid all of his assessments and dues on his certificate, as a member of the order, to the Grand Lodge of the State of Missouri, so incorporated and operating under our statutes, and performed all the conditions imposed by the contract on his part until the date of his death, which occurred November 7, 1909. During all of those years the insured retained his original certificate of insurance issued to him by the Supreme Lodge in 1892 and at no time surrendered it to or requested a new certificate in lieu thereof from the Grand Lodge of the State of Missouri, under whose jurisdiction he had come and which had undertaken, with his consent, to assume the obligation of the Supreme Lodge in that behalf.

By his last will, the insured, James Williams, appointed the plaintiff, Abraham Gibbs, as his sole legatee thereunder and also nominated him as the executor of the will. It may be that it was competent for the insured to thus dispose of the benefit under the original certificate, but it is admitted that Gibbs, the recipient of the bounty as designated in the will, is not a member of the family of the insured nor related to him by blood or otherwise nor dependent upon him in any manner and is, therefore, not within the class of persons authorized to take such benefits under our statute. As before stated, the suit proceeds against both

the Supreme Lodge, incorporated in the District of Columbia, which originally issued the certificate, and the Grand Lodge, incorporated in Missouri, 'as if it assumed its payment. Though both defendants were duly served, the Supreme Lodge did not appear but suffered judgment to go against it by default, and. the Grand Lodge, who prosecutes this appeal, defends alone on the ground that it is not competent for the personal representative to recover on such certificate and especially when the recovery is sought in behalf of a beneficiary not authorized under the Missouri statute.

We are not concerned with the powers of the Supreme Lodge which originally issued the certificate of insurance under its charter in the District of Columbia, and,. indeed, as to that matter, the court is wholly unadvised, for nothing was given in evidence touching it, except that it was a fraternal insurance society. But the statute of this State, under which the Grand Lodge Knights of Pythias of Missouri was incorporated in 1893, and which conferred all of the charter powers of that institution, authorized it to issue certificates only to provide for the relief and aid of its member and their families, widows, orphans or other kindred dependents. [See Sec. 2823, R. S. 1889.] Obviously this statute contemplates that such societies should accumulate a fund to be awarded as the bounty of the insured member as above suggested, and not to one, as here, who is not a member of the family of the insured nor related to him by blood or otherwise nor in any manner dependent upon him.

But though such be true, it is argued for plaintiff that, as the Supreme Lodge, which issued the certificate, omitted to avail itself of the privilege of becoming a fraternal beneficiary association in this State through qualifying and receiving a license as such under the statutes of Missouri, it must be regarded as an insurance company and the certificate so issued as a

policy of life insurance in the broad sense of that term, wholly unrestrained by the provisions of our statute on fraternal beneficiary societies. The proposition thus asserted are declared, but for another purpose, in the cases of Kern v. Legion of Honor, 167 Mo. 471, 67 S. W. 252; Toomey v. Sup. Lodge, K. of P., 74 Mo. App. 507; s. c., 147 Mo. 129, 48 S. W. 936. In view of the doctrine of these cases, it is said to have been entirely competent for the Supreme Lodge in 1892, to issue the certificate of insurance to James Williams, payable to his representative or representatives, for such is a proper insurance contract not within the influence of the fraternal beneficiary statute. Therefore, if the contract was valid when made, it continued so and it was competent for the insured to dispose of its benefits as he saw fit by his last will—that is, direct the payment to an entire stranger. It may be conceded that the contract, when made, was valid and enforceable, but, for the argument to prevail here, it must have continued identical in its terms with respect to the designation of a competent beneficiary.

No one can doubt—for it is the general rule—that a policy of life insurance or a designation of beneficiary, valid in its inception, remains so although the insurable interest or relationship of the beneficiary has ceased, but the rule obtains only in those cases where it is not otherwise stipulated in the contract. [See Bacon, Benefit Societies (3 Ed.), sec. 253; Connecticut Mut. Life Ins. Co. v. Schaefer, 94 U. S. 457; McKee v. Phoenix Life Ins. Co., 28 Mo. 383, 75 Am. Dec. 129.] That a contract as originally made may be subsequently modified as to material terms by the parties to it and that thereafter the rights flowing from it are to be determined and enforced in accordance with the modified contract, is not open to question. [See Lanitz v. King, 93 Mo. 513, 6 S. W. 263.] Though the contract here involved originally authorized the payment of the insurance vouchsafed to the personal represen-

tative or representatives of the insured and probably
left him free to dispose of it by will as he saw fit, it
appears that it was materially modified in respect of
this matter in 1893 when, with the insured's consent,
defendant Grand Lodge of Missouri became a party
to it. Even under the rule of the Kern and Toomey
cases, above cited, it cannot be successfully maintained
that the Supreme Lodge was an ordinary insurance
company so as to preclude it, when co-operating with
the insured in organizing the Grand Lodge under the
Missouri statute, from bringing the certificate of in-
surance to which it was a party within the purview
of the charter of the Missouri Grand Lodge, that is,
our fraternal insurance statute; for obviously both
the Supreme Lodge and the Grand Lodge with which
the insured voluntarily affiliated were fraternal in
character. The certificate itself and other revelations
in the record touching their constitution and by-laws
reveal this to be true beyond question. Therefore,
whatever may be the rule of those cases as to whether
the certificates issued by unlicensed foreign fraternal
societies, circumstanced as the Supreme Lodge, are to
bear or escape the burdens of our general insurance
laws, the character of the company is to be determined
by reference to the substance rather than to sheer tech-
nical rules. To this extent the doctrine of those cases
has surely been modified. [See Westerman v. Sup-
Lodge K. of P., 196 Mo. 670, 94 S. W. 470; Schmidt
v. Sup. Court Foresters, 228 Mo. 675, 706, *et seq.,* 129
S. W. 653.] This being true, it appears that the ar-
rangement between the Supreme Lodge and the in-
sured, one of its members, along with others, was to
the effect that the Grand Lodge should be organized in
Missouri under the Missouri statutes; that the Grand
Lodge in Missouri should assume complete jurisdiction
over Mound City Lodge No. 4, of which the insured
was a member, and should assume the obligation of
fulfilling the office of the Supreme Lodge toward the

insured as a member of the order and a certificate holder therein. Obviously the abstract rule relied upon is without influence, for the whole matter was one of contract between the parties as is always true with respect to the relations of such fraternal societies and their members, including, too, their insurance certificates, which are ever subject to the charter powers and constitution and by-laws of the order when expressly agreed to. [See Masonic Ben. Assn. v. Bunch, 109 Mo. 560, 19 S. W. 25; Lewine v. Sup. Lodge K. of P., 122 Mo. App. 547, 99 S. W. 821.] Touching this matter, it appears that the Supreme Lodge, which issued the certificate but had never qualified in this State, withdrew entirely from the field and committed the whole matter of its business to the Grand Lodge organized in Missouri under our statute. The insured and all of the members consented to this arrangement and became affiliated with the Grand Lodge of Missouri under its Missouri charter, which undertook to employ its powers in effectuating the certificate of insurance and fulfilling the office of the Supreme Lodge as to the social side of the order. It is true the insured omitted to surrender his old certificate and to apply for a new one from the Missouri Grand Lodge, but be this as it may, he agreed to the arrangement whereby the Missouri Grand Lodge was to utilize its powers in executing the contract of the Supreme Lodge, and it is only by maintaining that such was consummated the suit can be sustained at all against the Missouri Grand Lodge on the certificate issued by the Supreme Lodge. Obviously this certificate must be taken and enforced *cum onere*. There is no special contract of assumption as such in the case nor was any ever delivered to the members or annexed to the certificates. The right asserted here against the Missouri Grand Lodge arises solely from the arrangement whereby it came into being with the consent of

the insured and of the Supreme Lodge and through their co-operation for the purpose of accumulating a fund under its Missouri charter to effectuate the contracts of the Supreme Lodge then retiring from the State. The original contract was necessarily thereby modified with respect to the right of the insured to designate a beneficiary to take the fund, who was competent to receive it under the Missouri charter, for the Missouri Grand Lodge could accumulate a fund only in accordance therewith and for the purposes therein set forth.

By its charter (Sec. 2823, R. S. 1889) the Missouri Grand Lodge was empowered to provide for the relief and aid of its members and their families, widows, orphans or other kindred dependents of deceased members. While this statute does not expressly forbid the issuance of a certificate payable to the personal representative of the insured, it does so by implication, and it is clear that it does not authorize the designation of a stranger, in no way related by blood or marriage nor in any manner dependent upon the member, as beneficiary. [See Bacon (3 Ed.), sec. 255; Grand Lodge v. Elsner, 26 Mo. App. 108.] Although the certificate as originally issued by the Supreme Lodge authorized payment to be made to the personal representative of the insured and even though the insured might bequeath and direct his personal representative to pay it to a stranger, such was not allowable on and after the modification of the contract through the arrangement whereby, with insured's consent, he became a member of a subordinate lodge under, and accepted the obligation of, the Missouri Grand Lodge instead. Obviously this proceeding interposed the limitations of the charter of the Missouri company into the new contract as if an express provision to that effect obtained and operated to curtail the former right of designating the beneficiary and his disposition of the fund to the persons declared competent to take by the pro-

visions of our statute. [Bacon, Benefit Societies (3 Ed.), sec. 253.]

But because these benefit certificates first speak with authority as to vested rights on the death of the insured member, they are said to be, and are viewed as, testamentary in character, for until then a new beneficiary may be designated by the insured at any time to receive the bounty, similar to the right of a testator in his last will, excepting only that the beneficiary must be a competent person within the charter provisions of the society. [Masonic Ben. Assn. v. Bunch, 109 Mo. 560, 580, 19 S. W. 25; Order Ry. Conductors v. Koster, 55 Mo. App. 186.] In view of this, we must look as well to the statute in force at the time of the insured's death touching the same matter. By reference to that statute (Sec. 7109, R. S. 1909), it appears the plaintiff here is not qualified to take the benefit thereunder, for while the class has been enlarged so as to authorize a beneficiary who is an affianced wife or husband of and one merely dependent upon the member, no provision for one situate as is this plaintiff is made. Of course, if the insured could not make a valid designation of the plaintiff directly as his beneficiary in the certificate so as to enable him to take the fund, it would not be competent for him to do so indirectly as by will, for it is against the policy of the law because it infringes the principles of benevolence involved to permit the funds of these societies to be diverted to others than those contemplated in the statute authorizing their existence. [Am. Legion of Honor v. Perry, 140 Mass. 580.]

But it appears that the insured paid all of his dues and assessments and fully complied with all requirements on his part. In such circumstances it would be highly unjust to acquit the defendant of responsibility to the plaintiff executor on the certificate for the mere reason that he, as the sole legatee under the will, is not competent to receive the benefit, provided

the fund may be directed in its proper course to those truly entitled. In respect of this question, the case is to be viewed in charity, for it is not one of an immoral or illegal contract, in that the contract is expressly denounced or inhibited by the law, but rather it presents the features only, when we look to the certificate alone, of an unlimited authorization with respect to the designation of a beneficiary—that is, the certificate is payable to the personal representative and this would seem to imply that the fund should go into the *corpus* of the estate of the deceased or might be disposed of by will as the insured sought to do. Touching this matter alone, the contract may be regarded as *ultra vires,* for it is valid in every other respect. [Bacon, Benefit Societies (3 Ed.), sec. 265; Shea v. Mass. Ben. Assn., 160 Mass. 289.] This being true, it is to be said, whatever may have been the prior course of decision on the subject, the later and better authorities all go to the effect that when the contract has been fully executed, as here, on the one part by the payment of all assessments and dues and the death of the insured, the society will not be allowed to successfully assert, in defense, that the designation in the beneficiary certificate was one of a class of persons not included in the enumeration in the charter of those for whom benefits are to be provided. [See Bacon, Benefit Societies (3 Ed.), sec. 265.] We adverted to this doctrine in Armstrong v. Modern Brotherhood, 132 Mo. App. 171, 180, 112 S. W. 24, but predicated the judgment of the court on other grounds there. However, in the instant case, the precepts of natural justice invoke the full measure of the rule, for there can be no question as to its relevancy. That it is both sound and just in its proper application seems to be universally conceded. For authorities in point, see Benefit Assn. v. Blue, 120 Ill. 121; Edwards v. Am. Patriots, 162 Mo. App. 231, 144 S. W. 1117; Sergent v. Knights of Honor, 158 Mass. 557.

When a fund, such as this, is sought to be diverted from its proper purpose by will and the suit is by the executor, it is the duty of the court, if it appears the contract has been fully executed on the one part, to enforce the payment and direct its course to the proper recipient who is qualified as such under the charter. We say this because it is the purpose and the spirit of the law to award the bounties accumulated under benefit certificates to the persons for whom it is designed in the charter the fund should be accumulated, and for the further reason that the executor under the will, or the administrator of the insured, when the certificate so provides, is a proper party to prosecute the suit as his representative. But both from the obvious intent and spirit of the statute and an express provision to that effect, the benefit is free to the use of the parties designated and from attachment and execution or other claims of the creditors of decedent. [Sec. 7120, R. S. 1909; Beall v. Graham, 125 Mo. App. 38, 102 S. W. 636.] This being true, plaintiff executor is entitled to recover, but not to his own use as legatee under the will nor to the use of the estate of the insured, for the fund is not technically and strictly an asset of the estate of the insured, but rather special to the use contemplated in the charter. [Grand Lodge v. Dister, 77 Mo. App. 608; Bishop v. Grand Lodge E. O. of M. A., 112 N. Y. 627.] The recovery must, therefore, be had in trust, to the use of those for whom the benefit was accumulated under the charter and to whom it should be paid in accordance with the by-laws of the order when no proper designation of a beneficiary has been made.

As a rule, the administrator and executor, of course, represent the decedent generally, and, when he recovers in that capacity, recovers to the use of the estate and as available to all persons who have just claims against it. Because of this, it seems anomalous to permit a recovery by him in an action at law as in

trust for a special use not available to the estate and the general claims of creditors. However this may be, by our statute (Sec. 7120, R. S. 1909) the fund is relieved of all liability for the debt of either the certificate holder or the beneficiary named therein or of any other person who may have a right thereunder, and in view of this the courts seem to have modified this general rule, to the end of effectuating the manifest purpose of the benevolent statutes. The thought is, that this statute qualifies the right of the decedent. Therefore, this court, on a prior occasion, authorized a recovery by the administrator of the beneficiary in the certificate, who died after the decease of the insured member, her husband, and before the certificate was paid, as in trust for her heirs and free from the claims of creditors against her estate. However, that case was one in equity and was, therefore, of course, within a jurisdiction possessing complete powers as to trusts. But though such be true, the principle it reflects is identical in so far as the present question is concerned, for it essentially curtailed the powers of the administrator as to a general recovery in virtue of his office. Upon consideration of the matter, we believe the trend of judicial thought is, that the courts should lightly concern themselves with this refinement in executing benefit contracts and administering relief in accordance with the beneficent spirit reflected in the statutes under which the societies are organized and exist, for they pursue the same course in actions at law—that is, sustain recoveries on such certificates by the administrator or executor as in trust to the use of the parties who are rightfully entitled to the fund. [See Shea v. Mass. Ben. Assn., 160 Mass. 289; Burns v. Grand Lodge A. O. U. W., 153 Mass. 173; Rindge v. New Eng. Mut. Aid Society, 146 Mass. 286.] We believe this to be especially true and the doctrine peculiarly appropriate in those cases where the certificate is payable to

the personal representatives, as here, but for some inherent, valid reason the administrator himself may not recover for the benefit of the estate. [See Bishop v. Grand Lodge E. O. of M .A., 112 N. Y. 627.]

But it is not shown here as to whom the fund should go in accordance with the constitution and by-laws of the order made under its charter in event no beneficiary is designated by the insured, and we are therefore unable to direct its disposition after payment to the plaintiff executor. The judgment will, therefore, be reversed and the cause remanded to the trial court with directions to ascertain the fact touching this matter and give judgment for the plaintiff thereon according to the views above expressed. It is so ordered. *Allen, J.,* concurs; *Reynolds, P. J.,* concurs in result in a separate opinion.

## CONCURRING OPINION.

REYNOLDS, P. J.—I concur in the result reached by my brother NORTONI, but add this suggestion: In a dissenting opinion in Ordelheide, Admr., v. Modern Brotherhood of America, 158 Mo. App. 677, 139 S. W. 269, I held (1. c. 700 to 706) that interpreted by the by-laws, by the objects of the association, by the law of this State, particularly by section 7113, Revised Statutes 1909, when the term ''legal representatives'' was used by the member in designating his beneficiary, ''he must be held to have meant such persons as could lawfully become 'legal representatives' in a benefit certificate of that kind under the law of this State.'' Our Supreme Court, in Armstrong v. Modern Brotherhood of America, 245 Mo. 153, 149 S. W. 459, has, as I understand it, distinctly approved of this view. With this interpretation of the term ''legal representative,'' and the certificate here made payable to the ''legal representative or representatives'' of the member, when the change was made in the organization of this

association and its contracts were taken over by the new organization, this contract became a contract of a fraternal benevolent association, as organized under our law, and the amount payable under the certificate became payable to those who, under our law relating to such associations, can become the objects to the benefit. In short, the term "legal representatives" means, not the executor or administrator, but those who under our law can be the objects of the benefit.

In that same case of Ordelheide v. Modern Brotherhood of America, I expressed the opinion (l. c. 704 and 705) that, conceding for argument that the executor or administrator could recover, he would be bound, upon the appearance of blood relations, next of kin, or heirs of the member, to turn over the proceeds, if he succeeded in collecting, to those persons, according to our law of descent and distribution, to the exclusion of creditors, citing Grand Lodge v. Dister, 77 Mo. App. 608 and Beal v. Graham, 125 Mo. App. 38, 102 S. W. 636. We have that proposition now presented and I am in entire agreement with my brother NORTONI in the conclusion he has reached on it.