RICH *v.* STATE MUTUAL RODDED FIRE INSURANCE CO.
OF MICHIGAN.

INSURANCE—FIRE INSURANCE—WAIVER OF SUSPENSION — ARBITRA-
TION AWARD SET ASIDE.

In a suit by insured to set aside an arbitration award
disallowing their claim against a mutual insurance com-
pany for loss by fire, the decree of the court below in
favor of plaintiffs on the ground that, by accepting the
premium for 1923 without notifying plaintiffs of the sus-
pension of their policy for nonpayment of the 1922
premium, defendant waived said suspension, is affirmed,
on appeal; distinguishing *Johnson* v. *Insurance Co.*, 232
Mich. 204.[1]

Appeal from Ionia; Hawley (Royal A.), J.    Sub-
mitted January 8, 1926.    (Docket No. 57.)    De-
cided July 1, 1926.

Bill by Arno Rich and another against the State
Mutual Rodded Fire Insurance Company of Michigan
to set aside an award of arbitration.    From a decree
for plaintiffs, defendant appeals.    Affirmed.

*Glenn D. Mathews,* for plaintiffs.

*Kinnane & Leibrand,* for defendant.

BIRD, C. J.    Plaintiffs filed this bill to set aside an
arbitration award disallowing their claim against de-
fendant.    Relief was given to them by the trial court
and defendant appeals.    A review of the record and
briefs persuades us that the trial court is right in
the conclusions reached.    We, therefore, adopt the
opinion of the trial court as the opinion in the case:

"The bill of complaint in this cause was filed for the

[1] Insurance, 32 C. J. § 624.

purpose of vacating and setting aside the award of arbitrators disallowing the claim of the plaintiffs against the defendant insurance company for the insurance on property claimed to have been destroyed by fire.    The material facts in the case with one exception stand undisputed.    It stands undisputed that on the 25th day of June, 1918, the plaintiffs were husband and wife, and were the owners of 40 acres of land situate in Montcalm county in this State; and that located upon said lands was a dwelling house, barn and garage, and a considerable quantity of household furniture, and that on that date said plaintiffs caused said dwelling house, barn, garage and household furniture, severally to be insured against loss by fire in the defendant company then known as the Farmers Mutual Lightning Protected Fire Insurance Company of Michigan, Ltd., in amounts aggregating the sum of $1,500.

"On May 29, 1922, the plaintiffs were divorced and by verbal agreement the rights of Anna E. Rich in said property and insurance were transferred to Arno Rich, and on the 5th day of October, 1923, the entire insured property was destroyed by fire.    Immediately thereafter defendant company was notified of said loss and an agent of said company was sent to said premises and received proofs of loss executed by said plaintiffs showing the amount of the loss to have been $1,602.    It was admitted by defendant company that if the plaintiffs are entitled to recover at all, they are entitled to the sum of $1602.

"After receiving proofs of loss, and on the 9th day of November, 1923, the defendant company denied all liability for said loss upon the ground that plaintiffs had not paid their assessment for the year ending June, 1922, and for that reason said policy had been suspended.    It appears without dispute that plaintiffs had paid promptly, so far as the records show, all their assessments up to the assessment of June, 1921, but that said last-mentioned assessment was not paid until March, 1922.    The plaintiffs claim that assessment made in June, 1922, was promptly paid.    The defendant company denies that it was paid at all, and further claims that eight notices of said assessment were mailed to plaintiffs at various times, addressed to them at their last-known postoffice address, Greenville, Michigan, some of which at least were not delivered

but were returned to the defendant company by the postoffice authorities.    How many of such notices were returned does not appear; in fact it does not appear but that all of the same were returned to defendant company, except that plaintiff Arno Rich asserts that he received the first notice and immediately paid the assessment and obtained a receipt therefor, which was destroyed in the fire.    In fact without this testimony on the part of the plaintiff Arno Rich, there is no competent proof that either or any of the notices of such assessment were ever mailed to him by the defendant company.    He denies ever receiving any of said notices, except the first one.

"In June, 1923, defendant company made its regular assessments against its members subject thereto and claims that it sent a notice thereof to the plaintiffs. Plaintiffs deny having received a notice of such assessment until they, or one of them, received the notice marked 'Exhibit D' in this case.    On the receipt thereof, plaintiff Arno Rich paid to said defendant company the amount of said assessment as stated in said notice, to wit:    $12.14, and immediately thereafter received by mail from said defendant a check for 87c being alleged overpayment on said assessment, which check is in words and figures as follows:

" 'STATE MUTUAL RODDED FIRE INSURANCE CO. LTD.
Home Office—Flint, Mich.

No. 9491.

" 'Flint, Mich., Aug. 23, 1923.

" 'To D. J. EVANS, Treasurer, State Mutual Rodded Fire Insurance Co., Ltd.

" 'Pay to the order of Arno A. Rich...............$ 87/100
" 'Eighty Seven Cents Only.

" 'On Account of overpayment of ass't on pol. No. 25804.
" 'Payable at Industrial Savings Bank, Flint, Mich.

" 'W. T. LEWIS, President.
" 'GEORGE WHITAKER, Secretary.'

"There is no dispute but that all assessments due up to the time of the fire have been paid by plaintiffs, unless it was the assessment of June, 1922, for the alleged nonpayment of which defendant company claims to have made an order in due form suspending said policy of said plaintiffs.    Under the proofs it appears that defendant keeps no record of suspensions

of policies, except the record furnished by attaching a copy of the order of said suspension to the application for insurance of the member in default, and that when the defaulting member has paid the amount due with the penalty the order of assessment is detached from the application and destroyed.

"Plaintiffs' application of insurance was introduced in evidence on the hearing and attached to it was a copy of an order appearing to have been made on August 2, 1922, suspending the policy for the non-payment of the June assessment for the year 1922. The testimony shows that plaintiffs being in default on the assessment for June, 1923, a like order of suspension of said policy was made the latter part of July, 1923. This order of suspension was not attached to the application at the time said application was introduced in evidence in court and accordingly must have been detached at some prior time and doubtless under defendant's method of doing business was detached at the time that said assessment was paid on August 22, 1923.

"Under the terms of the charter and by-laws of said defendant company, no suit can be instituted by a member against the defendant company to recover for any loss under the policy, but all differences between the insurer and insured must be determined by arbitrators. It appears that four members of the entire membership of the company are designated by the company to act as arbitrators and that upon any difference arising between the company and any of its members, three of said arbitrators are notified by the secretary of the defendant company to act in determining the same.

"On December 3, 1923, plaintiffs appealed to the arbitrators from the decision of the company and accordingly the secretary of the company notified three of said arbitrators to act in respect thereto. On the 27th day of December, 1923, a hearing of said plaintiffs' claim was had before said arbitrators. On the same date the said arbitrators decided and determined as follows:

" 'That the State Mutual Rodded Fire Insurance is not liable to Arno Rich and Anna E. Rich under the terms of the application of Policy No. 25804, and that the said Arno Rich and Anna

235—Mich.—29.

E. Rich have no claim or demand enforceable against said company.'

"There is no question but that the defendant company had the right to assess the plaintiffs for any amount or amounts due to the company in the month of June of each year.    There can be no question but that the secretary had the power and the right to cancel or suspend the policy in case the plaintiffs did not pay the annual assessment within the time provided for such payment.    The language of the by-laws in that respect, however, is permissive and not mandatory, and is as follows:

" 'The secretary may cancel or suspend a policy, or any part thereof,' etc.

"Neither can there be any doubt but that binding notice of such assessment and of such suspension or cancellation may be given by mail addressed to the member at his last known postoffice address.    As I view it there were only two questions before the board of arbitrators and the two questions may be stated as follows:

"(1) Did the plaintiffs pay the assessment of June, 1922?

"(2) Did the defendant company by its acts, conduct and communications to plaintiffs in the year 1923 and prior to and up to the time of the fire on October 5, 1923, waive said suspension for the nonpayment of the 1922 assessment?

"The first of said questions was a question of fact and obviously was decided by the arbitrators against the plaintiffs.    While I think that the plaintiffs believed in good faith that they paid the 1922 assessment, yet I am not entirely convinced that they did pay it, but even if I were satisfied that such payment was made, I think that I would have no right under the proofs to vacate the award on that account.    The decision of the arbitrators in that respect related to a disputed question of fact and under the charter and by-laws of the company is clearly final and binding upon the plaintiffs.

"The second question is a question of law based upon the undisputed facts.    There can be no doubt but that in this State a court of chancery has the power to vacate an award which is based upon fraud, corruption

or mistake. *Laxton* v. *Insurance Co.,* 168 Mich. 448; *Palmer* v. *Insurance Co.,* 217 Mich. 292; *Shapiro* v. *Insurance Co.,* 219 Mich. 581.

"It also seems to be the settled law that arbitrators in the situation and under the circumstances surrounding those in the case at bar have no right to ignore a waiver of the provisions of a charter or by-laws and in the face and in spite of such waiver reject a just claim for the reason that such a result would constitute a legal fraud as against the claimant. *Laxton* v. *Insurance Co., supra.*

"In June, 1923, the secretary of the defendant company knew, or ought to have known, that the plaintiffs' policy had already been suspended for the nonpayment of the assessment of 1922, and that such. order or suspension was attached to the application.. In the latter part of July, 1923, the secretary of the' defendant company made a second order of suspension: and according to their method of doing business at-- tached said order to said application. Accordingly there were at that time two orders of suspension at- tached to said policy. In August, 1923, when said secretary mailed 'Exhibit D' to said plaintiffs, he knew, or ought to have known, that said plaintiffs were under two orders of suspension. In the communication, nevertheless, among other things he said:

" 'Date of suspension August 1, 1923. Notice of suspension for nonpayment of assessment. 'In accordance with the notice sent you one month ago your policy is suspended and will stand suspended until all assessments now due on said policy are paid. As soon as the amount due is received, your policy will be immediately reinstated without further trouble or expense to you.'

"In said exhibit was also included the following notation:

'Policy No. 25,804, Assessment.................$10.12
Stipulated damages ............................ 2.02

$12.14.'

"From this communication the plaintiffs had the right to believe that all they owed the company was the sum of $12.14, and were expressly informed that upon the payment of the amount due they would be reinstated. Plaintiffs received this notice and for-

warded the amount of $12.14 to defendant company, as per the terms thereof, and later received an acknowledgment thereof from the defendant company and a check for 87c, overpayment. Prior to mailing this receipt and check the secretary of said company knew the correct postoffice address of said plaintiffs, and where they could be reached by mail. He knew, or ought to have known, that said plaintiffs were in ignorance of the suspension of their policy for the nonpayment of the 1922 assessment. He knew, or ought to have known, that on receiving said 'Exhibit D' they would believe and would have the right to believe, that by paying the amount stated therein they were liquidating in full their liabilities to said company, and that the payment of said amount would reinstate their policy and that they thereby again would become indemnified against loss by fire under the terms of said policy. He knew, or ought to have known, that if they were aware of any suspension and that any further payment was necessary in order to relieve them from such suspension and afford them protection they would have forwarded the same. He knew, or ought to have known, that in the absence of information that any further payments were due, they would continue in the belief that they were reinstated as members of the company and indemnified against loss. In view of those facts, however, he remained silent as to any existing suspensions and permitted the plaintiffs to rest secure in the belief that they were insured until after the loss occurred. The company, through its secretary, was silent when it ought to have spoken.

"It is probably true that the company had the right to assess this policy for the year 1923, although it was under suspension for the nonpayment of the 1922 assessment, but upon receiving said 1923 assessment it was the duty of the company, if it intended to rely on such 1922 suspension, either to refuse to accept it or to accept it conditionally and to notify plaintiffs that such acceptance was conditional and what such condition was. This was not done. If the company can successfully pursue this policy of silence, it could have continued to make assessments on this policy year after year indefinitely and to receive and retain the same, knowing all the time that the plaintiffs, while believing that they were insured, were in fact not in-

sured and could not recover a penny in case of loss. Of course, courts do not and cannot countenance such devious and treacherous practices. *Shea* v. *Benefit Ass'n*, 160 Mass. 289 (35 N. E. 855, 39 Am. St. Rep. 475) ; *McQuillan* v. *Life Ass'n*, 112 Wis. 665 (87 N. W. 1069, 88 N. W. 925, 56 L. R. A. 233, 88 Am. St. Rep. 986) ; *Mitchell* v. *Insurance Co.*, 72 Miss. 53 (18 South. 86, 48 Am. St. Rep. 535).

"In the last-mentioned case it appeared that the policy of insurance provided for the keeping of an inventory and books of account in an iron safe or at some secure place apart from the premises in which the property insured was kept. Nevertheless, the company, with full knowledge that the insured had no safe and did not intend to have any, and with full knowledge that such inventory and books of account had been kept and were continued to be kept at the store, received premiums from the insured as for a valid policy. Loss having been incurred, the company sought to escape liability for such loss on the ground that the provision of the policy in respect to the keeping of books, etc., had been violated. In that respect the Mississippi court said:

" 'The insurer cannot be permitted to collect premiums with full knowledge of the existence of facts which might avoid the policy and with full knowledge of assured's purpose to continue in disregard of a provision working a forfeiture, to conduct the business as theretofore in such disregard. We cannot legalize by our sanction such perfidy.'

"Of course the general rule is as follows:

" 'If a forfeiture has occurred for breach of any condition in the policy, or of the contract in a mutual benefit society, and the company thereafter with knowledge of the facts unconditionally accepts or retains a premium or assessment, it thereby waives the former forfeiture and the company is estopped thereafter from setting up the grounds of forfeiture as a defense.' 3 Joyce on Insurance, § 1369.

"This doctrine is elementary and finds ample support in our Michigan cases. *Farmers' Mut. Fire Ins. Co.* v. *Bowen*, 40 Mich. 147; *Elmondorph* v. *Insurance Co.*, 91 Mich. 36; *Towle* v. *Insurance Co.*, 91 Mich. 219; *Laxton* v. *Insurance Co.*, 168 Mich. 448, and cases cited.

"The arbitrators had before them all the undisputed facts upon which the waiver of the suspension in question and the estoppel on the part of the company to assert the same are based. No other conclusion can be drawn from such facts than that such waiver and estoppel in fact exist as a matter of law. Nevertheless, the arbitrators in spite of such waiver disallowed this otherwise just and legal claim of plaintiffs; such a determination and result operate as a legal fraud against the plaintiffs and cannot be sustained in a court of equity.

"A decree will be entered granting the relief prayed for in the bill of complaint herein to the extent that the award of said arbitrators will be vacated and set aside and the policy of said plaintiffs will be decreed to be a valid and subsisting contract of insurance, and the plaintiffs will be awarded the agreed amount of their loss in the sum of $1,602 with interest. Plaintiffs will also recover their costs to be taxed.

"ROYAL A. HAWLEY,<br>
Circuit Judge."

In adopting the foregoing opinion as the opinion of the case, the court has not overlooked the recently-decided case of *Johnson* v. *Insurance Co.*, 232 Mich. 204. The facts in that case are easily distinguishable from those in the present case.

The decree will be affirmed, with costs to plaintiffs.

CLARK and McDONALD, JJ., concurred with BIRD, C. J.

FELLOWS, J. I do not approve of all that was said by the trial judge, and do not think we should adopt his opinion as the opinion of this court. I agree with the Chief Justice that the instant case is distinguishable from *Johnson* v. *Insurance Co.*, 232 Mich. 204, and concur in affirming the decree.

SHARPE, SNOW, STEERE, and WIEST, JJ., concurred with FELLOWS, J.